```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                        NORTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA

 5   VERSUS                      CRIMINAL NO. 3:24-cr-00103-DPJ-LGI

 6   JODY E. OWENS II,
     CHOKWE ANTAR LUMUMBA,
 7   AARON B. BANKS                                       DEFENDANTS

 8

 9
                          STATUS CONFERENCE
10           BEFORE THE HONORABLE DANIEL P. JORDAN,
               UNITED STATES DISTRICT COURT JUDGE,
11                       MARCH 7, 2025
                      JACKSON, MISSISSIPPI
12

13

14

15                   (APPEARANCES NOTED HEREIN.)

16

17

18

19

20

21
     REPORTED BY:
22
         CAROLINE MORGAN, CCR #1957
23       OFFICIAL COURT REPORTER
         501 E. Court Street, Suite 2.500
24       Jackson, Mississippi  39201
         Telephone:  (601)608-4188
25       E-mail:  Caroline_Morgan@mssd.uscourts.gov
```

```
 1   APPEARANCES:

 2
     FOR USDOJ (VIA VIDEO):
 3
         NICHOLAS W. CANNON, ESQ.
 4       MADISON MUMMA, ESQ.

 5   FOR THE GOVERNMENT:

 6       CHARLES W. KIRKHAM, ESQ.
         KIMBERLY T. PURDIE, ESQ.
 7
     FOR DEFENDANT OWENS:
 8
         T. GERRY BUFKIN, ESQ.
 9       ROBERT B. MCDUFF, ESQ. (VIA VIDEO)
         W. GARY KOHLMAN, ESQ. (VIA VIDEO)
10
     FOR DEFENDANT LUMUMBA:
11
         THOMAS J. BELLINDER, ESQ.
12       GERALD K. EVELYN, ESQ.  (VIA VIDEO)
         JEFFREY L. EDISON, ESQ.  (VIA VIDEO)
13
     FOR DEFENDANT BANKS:
14
         E. CARLOS TANNER III, ESQ.
15       R. THOMAS RICH, ESQ.

16

17

18

19

20

21

22

23

24

25
```

```
 1                IN OPEN COURT, MARCH 7, 2025

 2

 3        THE COURT:  All right.  Good morning.

 4        All right.  So this is essentially a scheduling

 5   conference.  We want to pick a trial date, and I'm going to

 6   set some other deadlines as well.  Let me say for the record

 7   that I'm not sure who it was but one of the defense

 8   attorneys called and asked whether the defendants needed to

 9   be here -- and I think it may have been Mr. McDuff.  In any

10   event this is not the type of proceeding that Rule 43(a)

11   would cover.  The defendants obviously have the right to be

12   here.  I didn't require it.  You know, they chose not

13   attend.  So to the extent that they could have appeared,

14   they waived that opportunity, but I don't think they were

15   required to be here.

16        All right.  I think probably the best place to start is

17   to -- is going to look at how long we think the case is

18   going to take to try, assuming, you know, there are three

19   defendants.

20        Mr. Kirkham, I think you told Ms. Powell that

21   Mr. Cannon is going to do most of the speaking on behalf of

22   the Government?

23        MR. KIRKHAM:  Yes, Your Honor.

24        THE COURT:  All right.  So I'm looking at my monitor.

25   I don't have names for some reason.  But, Mr. Cannon, I
```

 1    assume you are on the --

 2        MR. CANNON:  I have on a yellow tie.  I'm here.

 3        THE COURT:  Okay.  So what -- I have received an e-mail

 4    from the parties with some estimates.  The Government

 5    indicated at that point that you estimated that your case in

 6    chief would take two weeks.  Does that include jury

 7    selection?

 8        MR. CANNON:  I think give or -- give or take a day or

 9    two for jury selection, that is still the -- where we think

10    this -- how long this case will take for our case in chief.

11        THE COURT:  Well, you think jury selection is going to

12    take a day or two?

13        MR. CANNON:  I hope not.  But given the -- just the

14    high profile nature of the case, it may take a full day,

15    depending on the answers that we get from jurors regarding

16    their familiarity with some of the defendants.

17        THE COURT:  Well, I guess let me mention this:  Years

18    ago I presided over another criminal case involving the then

19    mayor of Jackson Frank Melton and jury selection took a full

20    week.  We did questionnaires to try to streamline it.  The

21    questionnaires indicated -- and by the way, this was a

22    district-wide venire, and 90 percent of the venire had seen

23    about the case, you know, in the news.  I suspect it's going

24    to be at least that here, you know, given I guess the

25    changes in how cases, you know, like this is covered, social

1    media and whatnot.  I mean, I would be shocked if we are

2    going to pick a jury in a day or two.  I think a week would

3    be -- I think in a week we would actually be doing pretty

4    well.

5        MR. CANNON:  I would defer to the Court's wisdom on the

6    length -- the amount of time that it would take to choose a

7    jury.  I think a week sounds certainly reasonable and that

8    would put us at about three weeks for the Government's case

9    and jury selection.

10       THE COURT:  Okay.  Mr. Tanner, I think I'm going to

11   start with you since you filed the motion that got us here

12   today.

13       MR. TANNER:  You want me at the lectern, Judge or --

14       THE COURT:  As long you are on a microphone just for

15   this purpose.

16       MR. TANNER:  Yes, sir.  Yes, sir.

17       Judge, there's a couple of issues that made me file the

18   motion.  Of course, I sent a letter motion that included

19   everybody on it and the Court advised me to go ahead and

20   file a formal motion, which I did.

21       THE COURT:  Forgive me.  Let me interrupt for just a

22   second.

23       MR. TANNER:  Yes, sir.

24       THE COURT:  Right now I'm trying to get an estimate of

25   how long you think the case is going to last.

```
 1          MR. TANNER:  Oh, I'm sorry.

 2          THE COURT:  Once we do that I'm going to come right

 3     back to you.

 4          MR. TANNER:  Yes, sir.

 5          THE COURT:  And I want to get a feel for the scope of

 6     this discovery.

 7          MR. TANNER:  Yes, sir.

 8          THE COURT:  But right now, let's assume a week to pick

 9     a jury.  How long is this going to take?

10          MR. TANNER:  Judge, I don't see the -- so if they are

11     saying a week to pick the jury and I think they are saying

12     they would start and then rest three weeks later.  That's a

13     month by itself.  So I think two weeks prior.

14          THE COURT:  I think two weeks for their case, one week

15     to pick a jury.

16          MR. TANNER:  Okay.  I don't see the defense, between

17     these three defendants, not taking at least two weeks to put

18     our cases on.

19          THE COURT:  Okay.

20          MR. TANNER:  I don't see it possible outside of that.

21          THE COURT:  Mr. Bellinder, you are here, so I don't

22     know if you are speaking on behalf of your client or

23     somebody that's joined by Zoom.

24          MR. BELLINDER:  I will.

25          THE COURT:  Okay.
```

1      MR. BELLINDER:  I would tend to agree with that.  I

2  think from the defendant's standpoint, considering three

3  defendants, two to three weeks for the defendants' case in

4  chief and that is not including a rebuttal.  So I think six

5  weeks probably total would be a reasonable estimate.

6      THE COURT:  All right.  Mr. Bufkin?

7      MR. BUFKIN:  Yes, Your Honor.  I agree with

8  Mr. Bellinder.  I think that two to three weeks.  So six

9  weeks total just to be on the safe side.

10      THE COURT:  Okay.  I will note that, you know, that too

11  is going to make it harder to pick a jury.  In the Melton

12  trial, I think the trial itself was only a week, maybe a

13  little more than that.  But at six weeks you end up with

14  jurors who have, you know, conflicts.

15      All right.  So six weeks.

16      All right.  Mr. Tanner, let me circle back to you.

17      MR. TANNER:  Yes, sir.

18      THE COURT:  And obviously I read your motion.

19      MR. TANNER:  Yes, sir.

20      THE COURT:  Give me some idea.  In the motion -- and

21  obviously I'm not asking you to talk about what you are

22  seeing, but kind of tell me the scope of this discovery that

23  you have received so far, and then I'll kind of get an idea

24  of whether there is more to come.

25      MR. TANNER:  Yes, sir.

1          First off, Judge, the amount of documents is extensive.

2     There are quite literally 44,000 pages of paper, and I think

3     I pointed out in my motion, Judge, that most of that, if it

4     were just FBI 302s or, you know, narrative reports, that

5     would be one thing.  But there are records -- I mean,

6     there's a huge amount of those records that consist of bank

7     records, for example.  We are talking dense records for

8     which Mr. Rich and I have already been exploring our need

9     for experts, both to streamline the case and to focus our

10    time better on, you know, main trial prep and mapping out

11    the case and deconstructing what the Government has put

12    together.

13         So you are not just saying almost 45,000 pages of

14    documents, but you are talking about the nature of the

15    evidence is significant.  Then with respect to the audio and

16    video recordings, Judge, there are -- there's about

17    500 hours thus far of audio.  And so we are talking about

18    individual clips.  And, you know, those clips are -- you

19    know, I don't want the Court to assume, I mean, 500-some

20    hours is 500 clips.  You have some clips that are very

21    small.  I mean, there may be thousands of individual clips

22    that we have to go through.

23         And the Government, I will give them credit with

24    respect to providing us at the outset when they gave us the

25    discovery an index.  That index is far more helpful than had

1    we not had an index, but going through this discovery, it's

2    not that I can look at some line on the index.  There may be

3    one word or one phrase that -- on the index that references

4    50 or 100 clips.  And I see how the Government attempted to

5    give us some direction in terms of summarizing what those 50

6    clips with that one heading represents, but that's not how

7    it kind of plays out when we are going through it.

8        And quite frankly, they summarize it that way, but the

9    then the file names have nothing to do with what's

10   summarized.  You know, it's just numbers.  And so that may

11   be a minor point, but I want the Court to fully appreciate

12   how we are having to attack it, and I don't quite frankly

13   think the Government could have done anything on that point

14   any better than what they did, but I'm just letting the

15   Court know.

16       And so then that was what the Government called their

17   first set of discovery production.  But to be fair, we also

18   got a separate disk or a separate drive or set of drives

19   with cellphone dumps.  Well, Judge, when you ask -- posed

20   the question of whether this is going to require the

21   production of more evidence, I think, for example, there is

22   going to be litigation here because if we have Mr. Banks'

23   cellphone, I think there is going to be litigation likely

24   about what -- I assume that the other defendants want

25   Mr. Banks' cellphone.  I'm assuming the Government is going

1    to push back on that, but then I think there will be an

2    issue, for example, of whether anything -- for example, with

3    respect to Mr. Banks, I may not be entitled broadly to

4    Mr. Owens' cellphone dump in its entirety.  But I think it's

5    incumbent upon the Government -- and I appreciate from my

6    communications with them that they have an entirely separate

7    taint teams as the rules require going through these

8    cellphones.  But there is going to be issues with respect

9    to, for example, is there anything in Mr. Owens' cellphone

10   dump that is exculpatory with respect to Mr. Banks and vice

11   versa.  And so I can see those issues coming down the road.

12       Now, I know you move cases along fast, Judge, but you

13   are always courteous with giving us time to do what we need

14   to do.  We are trying to put together motions and present

15   this stuff to the Court as fast as possible, but it's just

16   so much to go through.  And then part of the problem is we

17   don't want to jump the gun too fast filing a motion about

18   discovery and it's somewhere buried in these other 44,000

19   pages.  So that is part of the issue we are having too.

20       But Mr. Rich and I -- I trust these other gentlemen are

21   too -- but Mr. Rich and I are in constant communication

22   about -- you know, we are even attacking it differently than

23   we normally would.  He started with one type of thing and

24   I'm doing something else so that we don't unnecessarily

25   waste resources and time.

1    THE COURT:  Let me ask you about the last part of that.

2    MR. TANNER:  Yes, sir.

3    THE COURT:  I understand what you are saying.

4    MR. TANNER:  Yes, sir.

5    THE COURT:  And this is different than normal cases we

6    see, you know, on this docket.

7    MR. TANNER:  Yes, sir.

8    THE COURT:  I probably -- when we get to it, I may set

9    a date, you know, for discovery-type motions.  It's not to

10   say, you know, if something new pops up, you couldn't file

11   something after that date.

12   MR. TANNER:  Yes, sir.

13   THE COURT:  It seems to me that we would be better off

14   identifying issues like that early.

15   MR. TANNER:  Yes, sir.

16   THE COURT:  And along those same lines -- I'm hearing

17   what you are saying that, you know, you may be looking for

18   something that is actually in there, and I'm wondering

19   whether a discovery-type conference, you know, at some point

20   with the Government -- possibly to include, you know, the

21   magistrate judge, maybe not -- but, you know, as you develop

22   this list of things you are trying to find that you think

23   you are entitled to, before you file a motion, go ahead and

24   maybe -- I know often y'all communicate, but just sit down

25   and go through it and say here is what we think we are

```
 1    entitled to, and Mr. Kirkham may say, well, you have already
 2    got that; here it is.
 3         MR. TANNER:  Sort of like the civil process, how we
 4    would -- yes, sir.
 5         THE COURT:  Exactly.
 6         MR. TANNER:  Yes, sir.
 7         THE COURT:  I think that that might be more efficient.
 8    I know your client doesn't want to pay to have a brief
 9    written and turns out that you already had what you were
10    looking for.
11         MR. TANNER:  Yes, sir.
12         THE COURT:  And the quicker that you can get your hands
13    on the things that you need, the better for everybody.
14         Let me hear from the other defendants in terms of their
15    views on the scope of the discovery so far.  Y'all can go in
16    order.
17         MR. BELLINDER:  I think Mr. Tanner did a great job
18    outlining what we have seen.  There are just hours and hours
19    and hours.  He touched on the audio.  There is video as
20    well.  Some of it being surveillance.  It looks like not
21    even really clear on what is there.
22         You know, we were talking a minute ago, the smoking gun
23    of the case could be walking right past you and you wouldn't
24    even know, but you have to look through everything.  We have
25    to see everything.  It's not even a point where you could
```

```
 1    delegate much because, again, as counsel that is going to be
 2    litigating the case, we have to be a part of that.  So it's
 3    just going to take some time.  But I think Mr. Tanner
 4    touched on most of the issues we would have raised.
 5         THE COURT:  I mentioned -- well, I meant to ask.  He
 6    mentioned I think in his motion a number of witnesses that
 7    are already identified.  Do you have a ballpark of how many
 8    witnesses you are talking about?
 9         MR. BELLINDER:  Honestly, Judge, I couldn't tell you.
10    At this point, I mean, I would imagine at least dozens
11    there's probably, I mean, just in what we have been through
12    already.  I mean, there is --
13         THE COURT:  Okay.
14         MR. BELLINDER:  It's going to be a lot.
15         THE COURT:  Mr. Bufkin, do you have anything to add?
16         MR. BUFKIN:  Just briefly, Your Honor.  I thought it
17    was a good idea to add --
18         THE COURT:  And I'm going to ask if y'all would stand
19    when you speak in this court.
20         MR. BUFKIN:  Try to speak in the mic.
21         THE COURT:  It helps the court reporter so she can see
22    you and --
23         MR. BUFKIN:  Yes, Your Honor.
24         I thought it was a good idea to try to get together
25    with the Government, and, in fact, Mr. McDuff has already
```

1    done that early on.  Several of the issues that he addressed

2    with Mr. Cannon -- and Rob can pipe up on this as well --

3    the Government as I understand it was going to try to

4    provide with us a little better index.  Mr. Tanner is

5    correct that it's helpful, but it's not helpful in the way

6    that you would hope an index would be, where you could

7    reference the index, you would understand what that audio

8    tape or that document pertains to and then you could go to

9    it.  Really you have to actually open and look at the

10   document of the tape to understand what it's about.

11       So the Government was going to try to provide something

12   a little bit better if it could.  Some transcripts, they

13   have transcripts that are not perfect or complete, but they

14   are better than nothing, and we have asked for them and they

15   were going to consider whether they could provide those to

16   us as a way to speed this process up.  And then of course

17   the last thing we were asking them was can you direct us to

18   the evidence that you think is most important, things that

19   you expect to use at trial so that we can focus on that

20   first and hopefully be able to move quickly through the

21   other matters in the volume of discovery.

22       So I think we are still waiting on that as a kind of

23   threshold way of organizing our approach to the discovery.

24   Mr. McDuff can add something to that if he would like.

25       THE COURT:  All right.  Mr. McDuff, anything you would

1    like to add on that?

2         MR. MCDUFF:  Yes.  Thank you, Your Honor.

3         And let me preface it by saying I understand, you know,

4    there is a lot of upheaval in the federal government these

5    days and, you know, in just reading the press, it has

6    touched Mr. Cannon and Ms. Mumma's section of public

7    integrity.  So they have a lot to deal with.  But they also

8    indicated when we talked that perhaps they could provide us

9    with these hundreds of hours of tapes.  Obviously much of

10   that time is going to be irrelevant.  We need to listen to

11   it.  It is going to be people talking about something else

12   before they talk about the matters relevant to this case.

13   And Mr. Cannon said they would try to provide us with some

14   guidepost of which particular portions of the tapes were

15   relevant.  And so we are still waiting on that.  And, again,

16   I understand everybody has got other things going on, but

17   that has slowed us down because we want some guidance so

18   that we can use our time efficiently.

19        We also told them that we understand their transcripts

20   aren't final and we are not going to hold them to it.  You

21   know, we understand that changes may have to be made once

22   somebody does a more careful listen and transcription of it,

23   but it would really help us to have those transcripts and

24   will save us the time that we have to spend, you know,

25   listening to each tape figuring out what they are.

1          THE COURT:  Okay.

2          All right.  Mr. Cannon, do you want to chime in?

3          MR. CANNON:  Sure, Your Honor.  I think everything that

4     counsel has said has been accurate.  We have given -- we

5     have provided -- I appreciate the amount of discovery that

6     we have provided, and what we have tried to do is kind of

7     eliminate really any categories, like Rule 16 Jencks,

8     Giglio.  We are giving them out of everything right out of

9     the gate so they have the time that they need with their

10     clients to prepare.  This includes grand jury transcripts in

11     their entirety, the entirety of the FBI SENTINEL file that

12     is discoverable and all of the recordings which obviously

13     Your Honor has heard about.

14          We have -- we are in the process of having transcripts

15     done.  As we started to review some of the transcripts they

16     were not going to be useful really to share with the

17     defendants.  They often were not -- were missing the

18     identity of the speaker on the transcript.  We have sent

19     those back to the vendor.  We would like to get them a draft

20     as soon as possible.  That will kind of be a rolling

21     production of those transcripts, and I am happy to sit down

22     with each of the defendants either together or individually

23     and kind of point them to discovery and make -- make that

24     index that we provided more useful to them.  I think that is

25     great idea that Your Honor has mentioned.

1        In terms of what is coming next, I think the only real

2    large production will be the cellphone evidence that they

3    don't already have, and what we did first is we gave them a

4    full forensic copy of their own client's devices and

5    accounts that were the result of the search warrant.  Those

6    devices and accounts the Government -- the prosecution team

7    hasn't even seen because they had to go through a filter.

8    That filter process has been completed and the FBI has

9    reviewed all of the devices for in-scope material, and the

10   in-scope material is the material that we are permitted by

11   Attachment B of the search warrant to seize in our case in

12   chief, and we are going to be producing that in the next

13   week or so.  It may take two just to get it through our

14   litigation support process.  And that will be -- we'll send

15   that originally to the defendants themselves and this will

16   be the in-scope material.  That is what we seized from your

17   phones.  Give them a week or two review it to make sure

18   there are no issues with us disclosing the rest of that

19   information to the other codefendants.

20       And so I think that will happen within the next 30 days

21   and then they'll have everything that they -- most of what

22   they are entitled to under Rule 16.  We are hopeful that we

23   can work that stuff out.  I am hoping that the in-scope

24   material they won't mind sharing with each other.  Obviously

25   we have discovery obligation as Mr. Tanner had identified to

1    provide exculpatory material or material that may assist the

2    other codefendants in some way.  So we are going to do that,

3    but we are going to try to do it in an orderly fashion that

4    doesn't give them a bunch of duplicative information and

5    duplicative kind of productions.

6        THE COURT:  All right.  This may be hard for you to

7    answer, but I hear you saying there are transcripts coming.

8    There is the cellphone in-scope materials, and then there

9    will be need to be some conversations with the individual

10   defendants about producing their cellphone in-scope material

11   to the other defendants.

12       I mean, how many hours of recorded or cellphone data

13   are we talking about?  What is the volume of the cellphone

14   data and how many transcripts are we talking about?

15       MR. CANNON:  The transcripts, I think we are probably

16   talk about a couple of -- more than 20 transcripts that

17   we've already ordered for pertinent parts of the

18   conversation.  And I will tell the Court, you know, there is

19   500 hours.  A lot of it -- I would say, you know, 350 hours

20   is completely irrelevant kind of chatter.  They are entitled

21   to review it and they should review it and I'm encouraging

22   them to.  We are not having a lot of that transcribed for

23   obvious reasons.  It's expensive and it's irrelevant to the

24   case.

25       But the places where we think are relevant we are going

1    to transcribe and give to them.  That should help them focus

2    on what we think is actually the heart of our case as well.

3    As for the phone data, I don't know.  It's to my office in a

4    FedEx right now.  So I will have a better idea today of what

5    that looks like.  I think it's mostly text messages and

6    documentary stuff.  I don't think there's a lot of

7    recordings and videos on the cellphones themselves.

8        And we -- when we -- you know, we told the -- when we

9    instructed the FBI we were looking really closely at

10   Attachment B and things that fall within that attachment.

11   So it's going to be scoped for time as well as who --

12   communications.

13       THE COURT:  Okay.  I understand.  Thank you.

14       All right.  So let's go to it.  Mr. Tanner, what are

15   you asking for?

16       MR. TANNER:  I'm sorry.

17       Judge, I -- I'm just asking for an opportunity to

18   submit to the Court a new set of three dates and I think the

19   Government -- their pushback is on dates further out than

20   what they proposed, but I don't think they oppose us

21   submitting new dates.

22       Now, in anticipation of the Court asking me that

23   question I circulated to the defense because -- to the other

24   members of various defense teams -- requests about dates

25   because I figured you asked me, rather than come here and

1     ask you for more time, we could probably do it in the time

2     since my motion has been pending.  The closest we were able

3     to get was -- wasn't that far from our original dates,

4     Judge.  We were talking October -- September or October of

5     2026, but to be honest with you, Judge, the only reason I'm

6     hesitant -- because everybody agreed to those two months.

7     We were trying to avoid holidays like Thanksgiving or

8     Christmas, but everybody agreed to that but even then I

9     think that what the Court mentioned earlier in this hearing,

10    like putting perspective on how long one would reasonably

11    expect jury selection to last in a case like this, I think

12    that presents a different kind of timeframe, which is more

13    in line with what we have been thinking.

14         But, you know, the Government kept saying the whole

15    case would take -- I thought the Government was saying the

16    whole case would take 20 days.  I didn't really see that,

17    but now I think our best reasonable estimate on the minimum

18    would be six weeks.  So I don't know if that affects anybody

19    else's -- I know Mr. Rich and I are still available and we

20    would propose September and October of 2026, but I don't

21    know if that means we need to go back to the drawing board

22    just to have another pow wow with the other lawyers and even

23    amongst ourselves saying now that we are talking about six

24    weeks do we need more time than that.

25         I knew we were going probably have to litigate over

1    issues about these cellphones and transcripts and such, but

2    it sounds like the Government is already a step ahead of me

3    preparing to give that to us anyway.  And then as Mr. Cannon

4    was proposing some solutions about giving us time to push

5    back on certain issues from phone records being disclosed to

6    other people and other defendants here, I was also thinking

7    perhaps that -- well, first off, I think part of this is a

8    matter of approach.  I appreciate knowing what the

9    Government thinks is irrelevant, but I'm pretty sure

10   Mr. Rich and I are going to form our own ideas of what is

11   relevant and not.

12       But I think what Mr. Rich and I could possibly do,

13   speaking on behalf of Mr. Banks, is submit the Government

14   certain search times because we are already, based on

15   conversations with our client and discovery that we have

16   reviewed ourselves, we have a working theory here, and I

17   think that if Mr. Cannon and his team are open to it, we may

18   submit search terms for these various cellphones that we

19   think is relevant to is us, regardless of whether they think

20   it's important.

21       THE COURT:  All right.  Let's -- I do think that, you

22   know, some type of discovery conference where you can kind

23   of -- some type of discovery conference where you can flesh

24   all of that out makes sense, but in terms of the trial date,

25   I'm obviously sensitive to the need to thoroughly prepare.

1    On the other hand, you know, speedy trial right is also a

2    public right and the public has a right to a speedy trial.

3    I'm not aware of very many cases where there's a continuance

4    of this magnitude.  I would like for you to address that.

5        MR. TANNER:  Yes, sir.

6        All right.  Well, number one, Judge, I think that as

7    you very well know, Judge, it's not very easy to get a case

8    declared complex.  That happens in rare circumstances,

9    number one.  And I think there are issues or triggers

10   related to that designation, and I think the Court ruled

11   properly and I agreed with the Government's motion that

12   impact the speedy trial analysis both for the individual

13   defendants as well as for the public, but Judge, just being

14   frank here, I have had cases that necessitated more time

15   than we were talking about that were not deemed complex with

16   just about every federal judge I have ever appeared in front

17   of.

18       This case is not -- even if you look at the indictment,

19   Judge, this investigation went back so much further than --

20   and I'm -- I think the prosecution -- everybody here at

21   these tables understands that I'm trying to be sensitive

22   here about what I say.

23       This investigation went back well farther than the time

24   period that the indictment captures, and even though it did,

25   a lot of matters that -- the Government calls them multiple

1    investigations and spinoffs and such, but there are a lot of

2    pieces of this case that is charged in the indictment that

3    relate directly to the things that happened much earlier in

4    what the Government would likely call a separate

5    investigation.  And we think those matters are highly

6    relevant.  So, you know, Judge, that is why I was hired in

7    the way I was because, from the looks of the indictment, you

8    are talking about a two/three month window.  Well the

9    discovery goes back two, three years prior.

10   And so I understand the need for the public to have a

11   speedy trial as well as these defendants, Judge.  I'm

12   advocating for a trial here and I'm just looking at what I

13   have.  They sent me three external hard drives, and

14   apparently there are more coming.  And I'm -- I don't know

15   how we could possibly try at least that October of 2026

16   timeframe.

17   But what I communicated to the Court in my motion and

18   my letter, Judge, what I didn't want do is have us pick

19   dates and you block this big chunk of your calendar out and

20   maneuver everything around it and then I come back to you or

21   any of us come back to you later on in the process and, you

22   know, we eat those words because we represented to you it

23   could be done in that timeframe.

24   THE COURT:  Well, I can touch on that.  You know, in a

25   normal course of other criminal cases, you know, oftentimes

1    you'll have a couple of continuances and, you know,

2    something comes up and there is another continuance and it's

3    not as big a deal because you are talking about a one week

4    trial or something like that.  When I set this that is going

5    to be date.

6        MR. TANNER:  Yes, sir.

7        THE COURT:  I mean, somebody is going to have to be in

8    the hospital for us to move it.

9        MR. TANNER:  Yes, sir.

10       THE COURT:  Because there is too much -- too hard to

11   move a multi week trial.  So once it's set, I don't really

12   want to hear about.

13       MR. TANNER:  That's what I anticipated, Judge.

14       THE COURT:  Now, I'm going to set up some things that

15   are a little unusual.  I'm going to have some status

16   conferences because what happens sometimes is you grant a

17   continuance and they say, okay, I can put it on the back

18   burner now for a few months and I'll pick it up later.  I'm

19   going to set some periodic status conferences to make sure

20   that, you know, appropriate progress is being made and we

21   are not in a situation where you, you know, you wait to cram

22   for the exam, so to speak.  So once it's set that is going

23   to be the date.

24       Mr. Cannon, let me hear from you.  I -- it seems that

25   your circumstances have -- I mean, I don't know, just based

1       on what I heard this morning, what I read in the paper,

2       maybe your circumstance and support might be different than

3       what it used to be.  What is your position on this request?

4           MR. CANNON:  I think the Government's position, Your

5       Honor, is that this case can be tried in early 2026.  That

6       is an ample amount of time for us to meet with the

7       defendants, give them full discovery.  Whatever we can do to

8       aid them in making that date happen, if it's getting exhibit

9       lists in at the end of this here, we will do that.  If it

10      is, you know, arguing/relitigating motions well before the

11      trial we can do that.  We are prepared to make sure this

12      things happened in early 2026.  We think it's reasonable.

13      It's almost ten months from now and would certainly give

14      them the ample amount of time that they are going to need to

15      look at discovery and come up with defense, and we think

16      waiting longer than that really touches on what Your Honor

17      was talking about which is the public's right to a speedy

18      trial in a case like this.

19          THE COURT:  All right.  Any other defendants want to be

20      heard on this?

21          MR. BUFKIN:  Your Honor, just real briefly.  What I

22      have heard and I think this is what the Court alluded to is

23      they are still producing material and it's going to be a

24      large volume of material, and so we really don't know what

25      we don't know at this point.  We don't know the volume we

1    are going to get, when we are going to get it.  Mr. Cannon

2    said in a week or so and then it was 30 days, and I

3    understand it's a lot of stuff and it does take some time

4    and he can't be nailed down on that date.  But I think the

5    Court's point about once you set this case for trial that's

6    it, we would ask the Court err on the side of caution and

7    make sure that there is enough time depending on how long

8    the rolling production that the Government is going to

9    engage in takes.

10        THE COURT:  Initially the defendants mentioned May,

11   June or July.  I obviously have to weigh different

12   interests.  I have to make sure that the defendants have a

13   full opportunity to prepare for trial.  On the other hand,

14   the public does have a right to a speedy trial.  I think the

15   delay to September or October of 2026 infringes on the

16   public's right to a speedy trial.  I'm looking at my

17   calendar.  On the other hand this is obviously going to be a

18   lengthy continuance.  I will put in, as I have said, you

19   know, some additional procedures out of the norm all in an

20   effort to help you get prepared more quickly.

21        I think that a year to get ready for trial is enough.

22   I'm going to set it a little outside of that, and that's

23   because at this point we don't have all of the discovery,

24   but I'm going to -- you know, we may put some dates on here

25   for the Government to conclude.

1        I'm encouraged a little bit by the representation from

2    the Government that they are not distinguishing levels of

3    discovery as would normally occur, for example Jencks and

4    Giglio material, which technically they are not required to

5    produce five days before trial, but that is invitation for a

6    continuance if they were to dump all that on you five days

7    before trial.

8        So the fact that they are essentially, sounds like,

9    taking an open file approach getting you that material

10   earlier, that removes an impediment that sometimes we see.

11       So I'm looking at July 13th, 2026.

12       Now I want to talk about some other essential deadlines

13   here or dates.  I want to set a status conference for six

14   months from today, so September -- I'm just going to

15   arbitrarily say September 9th at 9:00.  Does that work for

16   the Government?

17       MR. CANNON:  Yes, Your Honor.  I will just alert the

18   Court I may be in trial.  I have a trial in August that I

19   think will last a month but that date works for the

20   Government.  We are -- as Your Honor knows, we are fungible.

21   Somebody will be there and will be prepared to talk about

22   whatever Your Honor needs to talk about.

23       THE COURT:  Well, Mr. Cannon, I mean, it sounds like

24   you are lead counsel and I would prefer that you be there.

25   So when does your August trial start?

```
 1          MR. CANNON:  Starts on the -- I want to double-check,
 2    Your Honor.  It's supposed to start on the 25th of August
 3    and last approximately a month.
 4          THE COURT:  Well then, what about October 1st?
 5          MR. CANNON:  That works, Your Honor.  Thank you.
 6          THE COURT:  Okay.  Mr. Tanner, does that work for you
 7    guys?
 8          MR. TANNER:  Yes, Your Honor.
 9          THE COURT:  Okay.  And Mr. Bufkin?
10          MR. BUFKIN:  Yes, Your Honor.
11          THE COURT:  All right.  Mr. Bellinder?
12          MR. BELLINDER:  Your Honor, I have a trial that week,
13    but one of -- I'm certain -- I don't want to speak for him
14    but I believe one of my cocounsel can be present.
15          THE COURT:  Okay.  All right.
16          MR. BELLINDER:  Particularly, if we can facilitate Zoom
17    for that purpose.  My cocounsel is based of Michigan, if
18    that's all right with the Court.
19          THE COURT:  Okay.  So October 9th at 9:00.  Is that
20    what I said?
21          MR. BELLINDER:  October 1st.
22          THE COURT:  October 1st, yeah, thanks.  Didn't sound
23    right.  October 1st at 9:00.
24          You know, if we get close to that date and there's
25    somebody that really needs to be here can't, you know, we
```

1    can find a date.  I want some type of status conference

2    around that date to make sure that we are still on track

3    here.  I'll probably set up another status conference during

4    that one just to see if there are any issues that are

5    developing that we need to address.  I know that I want to

6    have a conference three months before the trial date.  So

7    let's --

8        I want to have that conference for a couple of reasons.

9    One, jury selection is going to be difficult, and, you know,

10   in Melton trial, the questionnaires -- both sides wanted to

11   do questionnaires.  I think that they were very helpful.  I

12   think both sides, you know, benefitted from it.  It also

13   streamlines things a good bit because you identify people

14   that are clearly going to have conflicts.  So there is no

15   point in bringing them, you know, to trial.  But it takes a

16   while to work through the wrinkles of the questionnaires.

17   There's a fair amount of litigation over what the

18   questionnaires look like.  And then the questionnaires

19   themselves have to go out -- I think we sent them

20   seven weeks before trial.  So you have to back all of that

21   out because you send them to however many people you send

22   them to -- and that's something else we will need to

23   discuss -- and they have to send them back in and sometimes

24   you have to follow up with them people.  Eventually you get

25   them back in and the parties go through them.  All of that

1    to say you have to build in enough time for the process.  So

2    that's one of the things that we will discuss.

3        I want to discuss at that conference how we select the

4    jury.  I think that there are different methods used by

5    different courts, and I think that sometimes courts use

6    methods in cases like this where you are going to have a

7    really large venire.  So there may be ways to make it more

8    efficient, you know, without jeopardizing your right to

9    fully examine these potential jurors and make an informed

10   decision when you select the jury.  So I will ask you at

11   that point, you know, for any recommendations or suggestions

12   or ideas about how the jury selection process might look.

13       Also at that conference three months out, one of the

14   things that you run into a case like this where there is a

15   lot of audio and a lot of video and a lot of transcripts is

16   that there is often disputes about, you know, which part of

17   a video is going to be shown.  And the last trial I had, you

18   know, where this came up last year, you know, it was the

19   night before trial they are still trying to figure out, you

20   know, which parts of the videos the jury could see, which

21   make it awful hard on all of you, right.  I mean, I think if

22   at all possible -- and we will probably won't make those

23   decisions three months out -- but I want to talk about three

24   months out so we can start the process of comparing

25   transcripts and there is a procedure you go through where if

1      there are disagreements over the transcripts, trying to

2      decide what video needs to be shown so that it can be

3      edited.  I want to have a pretty substantive conversation at

4      that time to set up a timeline so we can make those

5      decisions and you're not trying to make them the night

6      before trial.

7          So April 1st is sort of a ballpark there, but does that

8      work for everybody for that conference?

9          MR. CANNON:  Yes, Your Honor, works for the Government.

10         THE COURT:  Okay.

11         MR. BELLINDER:  Yes, Your Honor.

12         THE COURT:  Okay.  Does anybody have a conflict with

13     it?

14         MR. TANNER:  No, Your Honor.  Is that 9:00 too?

15         THE COURT:  It is, yeah.

16         All right.  So April 1st at 9:00 for that -- that

17     conference.

18         Let me -- Mr. Cannon, I'll start with you, but normally

19     the deadlines for dispositive and nondispositive motions are

20     20 to 30 days before the trial calendar.  This case has a

21     special setting.  It's not on a calendar.  I want to go

22     ahead and set some dates.  I'm reluctant -- I'm reluctant to

23     have the dates that close to trial given the scope of the

24     case, and I feel like all of the parties would have -- I

25     guess would rather have some rulings on the, you know,

1    motions in limine and dispositive motions more than, you

2    know, a week or two before trial starts.

3        What are your thoughts on that?

4        MR. CANNON:  The Government agrees with Your Honor.  I

5    think we could do that in early 2026.  That would make a lot

6    of sense to have that have that -- have those filed.

7        When I say early '26, I mean have those filed,

8    responded to, reply if necessary and Your Honor ruling kind

9    of around the time prior to April 1st I think makes a lot of

10   sense.

11       THE COURT:  Let me hear from you guys.

12       By the way, I realize that there are sometimes

13   exceptions, right.  I mean, you may find something.

14       Is somebody trying to speak on video?  I'm sorry; I

15   heard -- was somebody trying to add something?  No, okay.

16       Obviously there are things that come up, right, you

17   know.  It's not -- I'm going to set the deadline but if

18   something develops after the deadline, you know, obviously

19   you need to raise the issue, but hopefully, you know, by

20   about a year from now you ought to know what your motions

21   are going to be.  So give me your thoughts on a good

22   initial -- I think I'm just going to do -- instead of

23   splitting them up, I'm going to do the same deadline for

24   dispositive and nondispositive, but what would make sense in

25   terms of the deadline?

1      MR. BUFKIN:  Your Honor, just kind of ball parking at

2  this stage, but probably early 2026, second month, somewhere

3  in there if that's not too late.

4      THE COURT:  Okay.  February 6th is a Friday.

5      MR. RICH:  And, Your Honor, I was going to suggest that

6  the first week in February.  That would allow roughly

7  60 days prior to that April status conference.

8      THE COURT:  All right, good.

9      So February 6th will be the deadline.  I think that

10  will help too.

11     All right.  Mr. Cannon, I did understand you correctly

12  that you are not waiting until five days before trial for

13  the items listed in the discovery order; is that right?

14     MR. CANNON:  Yes, that is correct, Your Honor.  We are

15  hopeful that we are going to have -- if they don't have it

16  already, they are going have it very soon in terms of

17  Jencks, Giglio material.  And I say that with the caveat

18  that we are obviously aware of our ongoing duty to disclose

19  information that we become aware of and we certainly

20  anticipate that we will be doing witness interviews over the

21  course of the next several months and year, and we will

22  disclose that stuff as it comes available to us to the

23  defense.

24     THE COURT:  Okay.  In terms of the transcripts and the

25  cellphone data, is 30 days from today enough time?

1        MR. CANNON:  Thirty days is enough time for the

2    cellphones.  The transcripts, I wish I could say that that

3    would be enough time.  We do have some that we got in this

4    morning.  I have not looked at them.  It really depends on

5    the shape they get to us from the vendor.  And as Your Honor

6    can imagine, some of this audio takes place in very loud

7    locations and so we get a lot of inaccuracies about who is

8    speaking and it's problematic.

9        So I would ask the Court to give us a little bit of

10    grace on when we turn those transcripts over.  I will tell

11    the Court though, too, the transcripts -- they have all of

12    the recordings themselves.  So some of them are very clear.

13    They are in a car or it's just two people, and so the

14    necessity for those transcripts is not going to be as

15    imperative in terms of preparation of trial, but we would

16    have everything by 2026 in good shape so they have that

17    full -- we have the full seven months before trial to

18    negotiate with the defense about what portions, what is said

19    and what comes in --

20        THE COURT:  Well, all right.  First, with respect to

21    the cellphones, I'm going to set a 30-day deadline to get

22    that produced.  We are talking about the in-scope material.

23    With respect to the transcript, I don't want to wait until

24    the end of the year if they have a motions deadline first of

25    February.  That's not enough time for them to do that.  I

1    understand, you know, there may be -- as you said, there may

2    be things that come in that you intend to immediately

3    produce, but I'm going to set a 60-day deadline for the

4    transcripts.

5        Now if, you know, what comes back from the vendor is,

6    you know, really messed up then you can file a motion for an

7    extension of time but I want to keep this things moving.

8        MR. CANNON:  Understood, Your Honor, and we will

9    produce -- I'm hoping we can produce some of this stuff next

10   week -- as soon as next week.  So that's fine.  Thank you,

11   Your Honor.

12       THE COURT:  All right.  I can set a -- we can do this

13   many ways.  I mean, I can set a date for the parties to have

14   sort of a discovery conference if that is helpful or I could

15   just leave it to all of you to, you know, do that on your

16   own, and I'll ask about it, you know, when we come back for

17   that first status conference.

18       Would you rather just -- instead of setting a date,

19   would you rather just do it among yourselves?  I do want

20   that --

21       MR. CANNON:  Your Honor, I will coordinate with each

22   defendant a discovery conference where we can sit down with

23   them, and we will do that -- obviously it's going to have to

24   be after the 30 days so we can get the in-scope material to

25   them, but if you wanted to set a deadline you can do some

1    time this summer.  We will get it done before then where we

2    can try to direct them.  And I just say this for the Court's

3    awareness, I'm always available to meet with a defendant if

4    they have a specific request or if they think that there is

5    something that they are missing or if there is a problem

6    with discovery.  We are available all the time.  I do not

7    want discovery to affect the timeline of this case and we

8    will make every effort to work with the defense.

9        THE COURT:  All right.  So I'm going to set just a --

10   I'm not going to set a date, but I'll set a due date of

11   June 26th for the parties to have had a discovery

12   conference.  I think that will help.  I'm going to set a

13   deadline of May 29th for any pleas, '26.

14       MR. TANNER:  I'm sorry, Your Honor.  Would you repeat

15   that, please?

16       THE COURT:  May 29, 2026 will be a plea deadline.

17       All right.  I think I have addressed everything that is

18   on my outline here.

19       Mr. Cannon, is there anything else on behalf of the

20   Government?

21       MR. CANNON:  I don't think so.  Just Mr. Tanner

22   referenced expert witnesses.  I don't think we need to set a

23   deadline for that today because they obviously may not know

24   the scope of the expertise that they are going to be seeking

25   but I would just maybe in October at that status conference

1    ask the Court to set some of deadline for that because I

2    know that can also be highly litigated and take time.

3         THE COURT:  Right.  I think that's a good observation,

4    and if I forget somebody can remind me, but during that

5    status conference that would be a good time to discuss it.

6         Anything else, Mr. Cannon?

7         MR. CANNON:  Nothing from the Government, Your Honor.

8    Thank you.

9         THE COURT:  All right.  Mr. Bufkin, anything else?

10        MR. BUFKIN:  No, Your Honor.

11        THE COURT:  All right.  Mr. Tanner?

12        MR. TANNER:  No, Judge, except are you still crafting

13   how you want us specifically to go about the piece you were

14   mentioning with the magistrate?  Are you still crafting that

15   or do you want us --

16        THE COURT:  In terms of discovery?

17        MR. TANNER:  Yes, sir.  I think the civil -- do you

18   want us to do it the way the civil --

19        THE COURT:  No.  You know, I sort of gained some ideas

20   with all of you.  I think what we landed on is that

21   Mr. Cannon is going to reach out to each defendant

22   separately and set a discovery conference to occur some time

23   before the date that I set.  So if there are any issues that

24   pop up obviously we can get the magistrate judge involved at

25   that point as a discovery matter, but hopefully you all can

1      work it out.

2          It did remind me, though, I do need an order.

3      Mr. Tanner, I'm going to impose on you since you filed the

4      motion, but if you would draft an order.  You can use sort

5      of as a starting place the standard order that you're

6      accustomed to with my cases.  But given the length of

7      this -- of this continuance and the public's right to a

8      speedy trial, I'm going to ask that you beef that up, all

9      right, and specifically reference the scope of discovery,

10     the fact that not all discovery has been produced at this

11     point, the complex nature of the case itself; and,

12     obviously, include, you know, a finding that the ends of

13     justice exception applies.  And if you would circulate that

14     among counsel and then send it to me, and I want to look at

15     it before it's signed, and then I'll send it back to -- to

16     everyone, and you can sign and have your client sign.

17         MR. TANNER:  Yes, Your Honor.  Yes, Your Honor.

18         THE COURT:  All right.  Mr. Bellinder, I think you are

19     the last one.  Anything else from you?

20         MR. BELLINDER:  Nothing from us, Your Honor.

21         THE COURT:  All right.  Well, thank you.  I do think

22     this was productive.  I'm sure we will talk about all of

23     this again.  We are adjourned.  Thank you.

24              (Proceedings concluded at 11:05 a.m.)

25     ************************************************************

1            **COURT REPORTER'S CERTIFICATE**

2

3        I, Caroline Morgan, Official Court Reporter for the

4   United States District Court for the Southern District of

5   Mississippi, do hereby certify that the above and foregoing

6   pages contain a full, true, and correct transcript of the

7   proceedings had in the forenamed case at the time and place

8   indicated, which proceedings were stenographically reported by

9   me to the best of my skill and ability.

10       I further certify that the transcript fees and format

11  comply with those prescribed by the Court and Judicial

12  Conference of the United States.

13       THIS, the 21st day of November, 2025.

14

15                    /s/ Caroline Morgan, CCR

16                    Caroline Morgan CCR #1957
                      Official Court Reporter
17                    United States District Court
                      Caroline_Morgan@mssd.uscourts.gov
18

19

20

21

22

23

24

25