UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                    CRIMINAL NO. 3:24-CR-103-DPJ-LGI

JODY E. OWNS II, ET AL.

ORDER

This Order addresses four motions in limine the Government filed to exclude (1) inadmissible hearsay [90]; (2) certain anticipated defenses [92]; (3) improper use of law-enforcement reports [94]; and (4) arguments about the merits of official acts [95]. It also addresses Defendant Jody E. Owens II's motion in limine [98].

I.    Overview

A grand jury charged Defendants Owens, Chokwe Antar Lumumba, and Aaron B. Banks in an 11-count indictment. Indictment [3]. The counts include conspiracy, federal program bribery, use of an interstate facility in aid of racketeering, honest services wire fraud, money laundering, and false statements, though not each Defendant was charged with each count. *Id.* at 20–31.

II.   Standard of Review

The Fifth Circuit has summarized the standard applied to motions in limine:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quoting Commentary, *The Motion in Limine: Pretrial Trump Card in Civil Litigation*, 27 U. Fla. L. Rev. 531, 531 (1975)).

But blanket pretrial exclusions of evidence must be considered with caution. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357 (5th Cir. 1995) ("We agree with other circuits that have cautioned that an appellate court should carefully examine blanket *pre-trial* evidentiary rulings."). Finally, as with all in limine orders, the non-prevailing party may revisit the issue at trial outside the jury's presence. *See Jackson-Hall v. Moss Point Sch. Dist.*, No. 3:11-CV-42-DPJ-FKB, 2012 WL 1098524, at *4 (S.D. Miss. Apr. 2, 2012). The Court will reserve final judgment for any issue revisited at trial away from the jury.

III.     Motions

    A.     Motion to Exclude Inadmissible Hearsay [90]

The Government moves the Court to "enter an order excluding inadmissible hearsay evidence. In addition, the government seeks an order requiring the Defendants to identify any recordings they will seek to admit under Rule 106. Gov't Mot. [90] at 6. The Government fears that once it offers audio/visual evidence of conversations with the Defendants (along with transcripts), Defendants will try to offer their own hearsay statements or use Rule 106 as an end-run around the rule against hearsay. While this motion is denied as premature, the Court will address it to provide guidance.

To begin, the Government correctly notes that a party may not offer their own hearsay statements under Federal Rule of Evidence 801(d)(2). *Id.* at 3. Under that rule, a statement is not hearsay if "offered *against* an opposing party" under certain conditions. Fed. R. Evid. 801(d)(2) (emphasis added). The plain text would not allow a party to offer their own hearsay statements, and Defendants don't suggest otherwise in their responses.

The Government is also correct that Rule 106 cannot be used merely to introduce a defendant's version of the case. Gov't Mot. [90] at 4. The rule states:

2

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time.  The adverse party may do so over a hearsay objection.

Fed. R. Evid. 106.  "Neither the Constitution nor Rule 106 . . . requires the admission of the entire statement once any portion is admitted in a criminal prosecution."  *United States v. Branch*, 91 F.3d 699, 729 (5th Cir. 1996).  Thus, "Rule 106 permits a party to correct an incomplete and misleading impression created by the introduction of part of a writing or recorded statement[, but] it does not permit a party to introduce writings or recorded statements to affirmatively advance their own, alternative theory of the case."  *United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021) (citing *Branch*, 91 F.3d at 371), *cert. denied*, 142 S. Ct. 787 (2022*);  see also Branch*, 91 F.3d at 728 ("We do not doubt the exculpatory nature of the excluded statement, but that does not require its admission under Rule 106.") (citing *United States v. Smith*, 794 F.2d 1333, 1335 (8th Cir.), *cert. denied*, 479 U.S. 938 (1986)).

At a general level, the Government's arguments are correct under both Rules 801(d)(2) and 106.  But without knowing the Government's designations, Defendants' Rule 106 counter-designations, and Defendants' other designations, it is impossible to know whether any issues exist.  First, the counter-designations might be proper.  Second, Rule 106 allows an adverse party to introduce other parts of a statement "over a hearsay objection."  Fed. R. Evid. 106.  Third, not every statement from a party is hearsay.  For example, an out-of-court statement is not hearsay unless offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  And even if the statement is hearsay, Rule 803 provides exceptions.  To that point, Defendants argue that some of their statements might be offered to show their then-existing mental, emotional, or physical condition, which Rule 803(3) allows.  Until the Court knows

3

which statements Defendants will offer and when (i.e. under Rule 106 or in their case in chief), it cannot say whether they are admissible.

There is, however, one statement that has been identified. Lumumba states that he plans to offer a speech he gave in Fort Lauderdale, Florida. *See* Lumumba Resp. [122] at 4–5. "The government has no objection to the introduction of testimony about the speech (including its length and purported purpose)," but it "will object to any attempt to admit the substance of the 35-minute speech." Gov't Reply [143] at 2. It reasons that "[s]uch a long digression is likely to confuse the jury as to the issues before them and the content of the speech is irrelevant." *Id.* Here again, the Court lacks the context necessary to rule. It may be true that not everything in the speech is relevant or admissible, and its length and potential to confuse the issues could also implicate Rule 403. But Lumumba has not yet offered this evidence and may not elect to use the entire speech (his response highlights a few statements). Even if he does, he must offer it into evidence before playing the tape, so there will be time for a contemporaneous objection. An in limine order preventing irreparable prejudice is unnecessary.

In sum, this part of the motion is denied. The Court has given the parties dates to exchange designations and will work with them to resolve any objections.

B.    Certain Anticipated Defenses [92]

The Government moves to exclude evidence and argument supporting three anticipated defenses—entrapment, nullification, or "a defense that runs counter to the Rules of Evidence." Gov't Mot. [92] at 1. The Government did not separately address a defense running "counter to" the rules, but it did address the rules as applied to specified defenses.

4

1.    Entrapment

***Banks and Lumumba.***   Not every Defendant intends to assert entrapment.  For instance, Banks "has no intention of advancing an entrapment defense to the charges against him."  Banks Resp. [138] at 1.  Lumumba seems to take the same approach.  He notes that the Government bases its motion on "speculation as to entrapment, inducement, and affirmative defenses that Lumumba has not pleaded."  Lumumba Resp. [123] at 1.

While that's not a definitive statement, the circumstances suggest that Lumumba will not assert entrapment.  To begin, a defendant can be required to make a pretrial showing that evidence will support an affirmative defense like entrapment.  *See United States v. Bailey*, 444 U.S. 394, 416 (1980).  The Government's motion would require a substantive response from Lumumba if he intended this defense, yet he offers no response to the factual and legal arguments.  Nor did he raise entrapment in his motion to dismiss [100], and the motions deadline has now passed.  It therefore appears that, like Banks, Lumumba does not intend to assert entrapment, which leaves no reason to deny the motion as to these Defendants.

***Owens.***   Owens does assert entrapment and raised the defense in his denied motion to dismiss.  *See* Order [162].  Entrapment has two elements:  (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant.  *See United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001); *Jacobson v. United States*, 503 U.S. 540, 548–49 (1992).

> Once a defendant makes a prima facie showing of entrapment by presenting "some evidence that Government conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it," the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime and, thus, was not entrapped.

*United States v. Arditti*, 955 F.2d 331, 342 (5th Cir. 1992) (quoting *United States v. Johnson*, 872 F.2d 612, 621 (5th Cir. 1989)).

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)).  Thus "unless it can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused." *Sherman v. United States*, 356 U.S. 369, 377 (1958); *see also Goss v. United States*, 376 F.2d 812, 813 (5th Cir. 1967) (per curiam) (the "issue of entrapment is a question for the jury unless as matter of law the defendant has established beyond a reasonable doubt that he was unlawfully entrapped").  But if no reasonable juror could find entrapment, the defendant is not entitled to an entrapment instruction.  *United States v. Garcia*, 546 F.2d 613, 616 (5th Cir. 1977) (affirming refusal to give entrapment instruction).

The Government's motion seeks something else, an order prohibiting Owens from mounting or mentioning an entrapment defense.  The Government cites no cases when this happened.  Its cases instead show that entrapment is typically a jury issue.  *See, e.g.*, *Arditti*, 955 F.2d at 343 (rejecting defendants' entrapment-as-a-matter-of-law argument and noting that "entrapment defense in this case, 'as in most cases, was not resolvable by the court as a matter of law'") (quoting *United States v. Nations*, 764 F.2d 1073, 1077 (5th Cir. 1985)); *see also Sorrells v. United States*, 287 U.S. 435, 452 (1932) (holding "trial court was in error in holding that as a matter of law there was no entrapment and in refusing to submit the issue to the jury").

Although the Court has ruled that Owens failed to prove entrapment as a matter of law, *see* Order [162], that does not mean that he is precluded from pursuing that defense at trial.  *See Goss*, 376 F.2d at 813.  Whether Owens can meet his burden based on the trial evidence remains to be seen.  But the Court will not prevent him from attempting to prove his theory of the case.

2.    Nullification

The parties agree that nullification arguments are improper.  *See* Lumumba Resp. [123] at 1–2; Owens Resp. [130] at 6; Banks Resp. [138] at 3.  But they dispute whether that prohibition prevents Defendants from addressing five topics:  "(1) government's charging decisions; (2) government's conduct; (3) government's motives; (4) resources and cultural issues; and (5) evidence of prior good acts of the Defendants."  Gov't Mot. [92] at 9.

***Charging decisions.***  According to the Government, "[i]t is axiomatic that the purpose of a criminal trial is to determine whether the government has met its burden of proof as to the charged crimes, not to examine why the government did or did not indict certain individuals." *Id.*  It therefore "requests that the Court preclude evidence, comment, and argument regarding the government's charging decisions," asserting that those issues are irrelevant to the charged crimes and would be unfairly prejudicial and confusing.  *Id.* at 9–10.

Only Defendants Banks and Owens directly addressed this request.  Owens agrees that he could not argue "that the jury cannot convict because the government has refused to charge other public officials with respect to campaign contributions."  Owens Resp. [130] at 7.  Banks suggests that the requested ruling might prevent him from addressing which counts are charged against which defendants or that the charged crimes do not match the evidence.  Banks Resp. [138] at 4.  His arguments seem to exceed what the Government seeks to prevent—"argument[s] as to why the government did or did not indict certain individuals."  Gov't Reply [142] at 3.  This portion of the motion is granted.  While Defendants are not precluded from exploring issues like those addressed in Banks's response, anything else must first be raised outside the jury's presence.

7

***Government misconduct.***  "The government also requests the Court to preclude evidence, comment, or argument designed to encourage nullification based on purported government misconduct."  Gov't Mot. [92] at 10.  While the Government does not identify the specific misconduct, it notes that Owens has moved for dismissal on this issue.  *Id.*; *see* Owens Mot. [75] at 1.  Lumumba's motion to dismiss also asserts prosecutorial misconduct.  *See* Lumumba Mot. [100].  This part of the Government's motion raises a gray area that may need further development at trial.  The Court will, however, offer initial guidance.

For starters, some arguments are off limits.  For example, whether governmental misconduct is a legitimate basis for dismissal is a question of law for the court.  *See United States v. Graves*, 556 F.2d 1319, 1322 (5th Cir. 1977).  It "does not present any question for a jury to decide."  *United States v. Stanley*, 765 F.2d 1224, 1232 (5th Cir. 1985).  So because the Court denied Defendants' motions to dismiss based on this defense, "a jury instruction encompassing such a defense [would be] improper."  *Graves*, 556 F.2d at 1322; *accord United States v. Anderton*, 629 F.2d 1044, 1047 n.2 (5th Cir. 1980); *see also United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) ("Whether the government has stepped beyond permissible constitutional bounds in attempting to enforce the law is a legal question, not a factual one.").

Defendants neither address the Government's legal authority nor offer authority that would allow them to make a governmental-misconduct argument to the jury.  And if the issue is not for the jury to decide, then offering evidence and argument to support it would be substantially more prejudicial and confusing than probative.  *See* Fed. R. Evid. 403.  The motion is granted to the extent that the Government seeks to prevent a governmental-misconduct argument.

That said, Defendants note that they should be allowed to impeach the Government's witnesses on issues like credibility and bias. *See, e.g.*, Lumumba Resp. [123] at 2 (citing *United States v. Abel*, 469 U.S. 45, 51 (1984) (holding "it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence")). And that could include questions—but not extrinsic evidence—about "specific instances of a witness's conduct" if "probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).

Defendants also note that cross-examination should include the right to probe the Government's witnesses on the steps taken during the investigation. *See, e.g.*, Banks Resp. [138] at 4. On that point, it seems probable that some facts Owens used to support his pretrial governmental-misconduct defense could be admissible because they form a part of the narrative. Or they may reflect typical impeachment, like inquiries into prior inconsistent statements. And because Owens intends to pursue entrapment, the evidence may also be relevant to the inducement element. *See Mathews v. United States*, 485 U.S. 58, 63 (1988). The Court therefore agrees that facts about what happened are different from arguments that those facts constitute governmental misconduct.

The Government acknowledges some of this in its reply:

> The government does not dispute that the government's witnesses, like all witnesses, may be subject to impeachment by contradiction if defense counsel has a *good-faith* basis and supporting evidence of the existence of bias, prejudice, interest in the litigation, or motive to testify in a particular fashion. That said, the government's chosen tactics and conduct throughout the investigation are irrelevant to the question of guilt that the jury must decide. *See United States v. Graves*, 556 F.2d 1319, 1322 (5th Cir. 1977). So too are baseless allegations related to the government agents' motives for investigating this case. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). Contrary to Owens's assertions, the motives of the government are not germane to the questions of inducement and predisposition

Gov't Reply [142] at 3.

9

In sum, Defendants may not characterize facts as misconduct or make arguments suggesting a governmental-misconduct defense without first raising the issue outside the jury's presence.  But a blanket pretrial prohibition against inquiries into alleged facts Defendants may view as misconduct would be too restrictive.  Those objections must be addressed on a case-by-case basis.[1]

***Government's motives.***  Similar to the last category, the Government seeks to preclude any arguments about "selective or vindictive prosecution" or that "otherwise question the government's motives in front of the jury."  Gov't Mot. [92] at 11.  This raises separate issues.

Starting with selective prosecution, the Fifth Amendment prevents the government from prosecuting "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'"  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  Significantly, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *Id.* at 463.  Thus, "the selective prosecution defense is an issue for the court rather than the jury."  *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *see also* Fed. R. Crim. P. 12(b)(3)(A)(iv) (stating that "selective or vindictive prosecution" defenses "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits").

Owens's response suggests that he may intend to make a selective-prosecution-type argument.  *See* Owens Resp. [130] at 8.  But neither he nor the other Defendants asserted this defense in a pretrial motion as Rule 12(b)(3)(A)(iv) requires, and the motion deadline has passed.

---

[1] It seems likely that a limiting instruction will be necessary on this point.  If the Government wants one, it should draft a proposal and share it with opposing counsel.

Even if they had, the defense requires a showing that similarly situated comparators were not prosecuted. *See Armstrong*, 517 U.S. at 465. That hasn't happened either. Nor did Defendants address *Armstrong* or offer their own legal authority.

Because this is not a jury issue, suggesting that the Government prosecuted them based on their race or other illegitimate reasons would be substantially more prejudicial and confusing than probative. *See* Fed. R. Evid. 403. The Court therefore grants this part of the motion. If Defendants wish to broach this subject, they must first raise it outside the jury's presence.[2]

The second part of this request is harder to assess. The Government would exclude any evidence or argument that "otherwise question[s] the government's motives in front of the jury." Gov't Mot. [92] at 11. The Government did not fully explain this request, which prompted Banks to question how far it goes: "How could the defendants possibly defend themselves if 'the Government's conduct,' 'the Government's motives,' and all that those phrases broadly encompass, are off-limits at trial?" Banks Resp. [138] at 4.

While the Government's motion might beg that question, its analysis focuses on selective prosecution. In other words, it addresses questions or arguments suggesting an improper motive *for investigating and prosecuting* Defendants. Those issues must first be considered at sidebar. But "motives" encompasses a lot. It could, for example, preclude a question as simple as "why did you record the conversation?" So to the extent this motion could be read to mean Defendants can't question motive at all, that would go too far. The Government is free to raise timely objections at trial.

---

[2] Vindictive prosecution does not appear to be the parties' concern, but for similar reasons it must be raised outside the jury's presence.

***Resources and cultural issues.*** The Government gives several ways Defendants might seek nullification based on resources or cultural issues.

Starting with resources, the Government fears the suggestion that the prosecution was a poor use of government funds. Gov't Mot. [92] at 12. It does not seem from the responses that this is Defendants' intended argument, so that much is granted. Banks does note, however, that it "is relevant and within bounds for the defendants to address at trial the various resources, including, but not limited to, people, boats, airplanes, and money, the Government employed to investigate this case. Those 'resources' are central to the facts underlying the Indictment and to Banks' defense." Banks Resp. [138] at 4. The Government acknowledges those points in reply but maintains that "*commentary* as to whether that was proper use of government funds is irrelevant and should be precluded." Gov't Reply [142] at 12. The Court agrees and grants this motion to that limited extent.

The cultural issues are harder to harness. Several issues touch on the Government's motives for bringing charges (e.g., "Defendants might try to claim that they were targeted because of race" or Defendants "might try to claim that the federal government has it out for local officials or is 'weaponized'"). Gov't Mot. [92] at 12. Other issues relate to the impact on the Defendants (e.g., "Owens might try to claim that the prosecution has distracted him from his job as Hinds County District Attorney"). *Id.*

Owens most directly expresses his intent to make such arguments. *See* Owens Resp. [130] at 8. But he offers no legal authority explaining why the Government's motives for prosecuting are relevant and admissible. Nor has he addressed the binding authority the Government cites holding that selective prosecution and governmental misconduct are not jury issues.

12

In any event, the Court has already considered selective prosecution and the Government's motives above.  And as to arguments like the impact on Defendants, Defendants have not shown that they offer any probative value or that they could overcome Rule 403.  On this record, the issues covered in this section appear to have no probative value, and presenting them would cause unnecessary delay, confusion, and unfair prejudice.  The issues would therefore violate Rule 403.

Again, the Court does anticipate some gray areas here because witnesses may be examined about what happened and impeached over their credibility.  The Government will need to offer objections at trial as to those subjects.  Beyond that, if Defendants wish to assert issues like those listed in this section of the Government's motion, they must first raise them outside the jury's presence.

***Prior good acts of the Defendants.***  "The Government anticipates that the Defendants may attempt to offer certain evidence or arguments regarding the Defendants' prior good acts. That evidence and argument would constitute improper character evidence and should be precluded."  Gov't Mot. [92] at 12.

This issue falls under Federal Rules of Evidence 404 and 405.  Under Rule 404(a)(2)(A), "a defendant may offer evidence of the defendant's pertinent trait."  Rule 405 then provides these methods for proving character:

> (a) By Reputation or Opinion.  When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion.  On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

> (b) By Specific Instances of Conduct.  When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

Fed. R. Evid. 405(a)–(b).

The Government acknowledges in its reply that some specific instances might be admissible under these rules, but it insists that Defendants must satisfy those rules and the other Rules of Evidence before that evidence can be admitted.  Gov't Reply [142] at 4.  For example, the Government notes a potential Rule 403 problem if Defendants offer "a parade of prior good acts."  *Id.*  And it observes that the acts should not be "remote, hearsay, or cumulative."  *Id.*

All of that could be true, but the Court does not yet know what will be offered or how it will be offered.  And given that the rules allow this evidence under certain circumstances, it is impossible to draw an admissibility line before trial.  In any event, the good-acts evidence does not appear to raise prejudice concerns that support in limine rulings.  While the Government remains free to object at trial, this part of the motion is denied.

C.    Improper Use of Law-Enforcement Reports [94]

The Government moves to preclude Defendants from improperly using reports about witness interviews commonly referred to as FBI Forms 302.  Gov't Mot. [94] at 1.

> Specifically, the Court should preclude the defense from introducing the contents of the 302s to impeach witnesses on the basis of inconsistent statements because the 302s are not the statements of the witnesses themselves.  Moreover, the Defendants should be precluded from publishing the contents of the 302s to the jury, or otherwise suggesting to the jury that the 302 is a statement of the witness.

*Id.* at 2.

"Under the Jencks Act, 18 U.S.C. § 3500, these FBI Forms 302 are only discoverable if they contain a written, signed statement of a government witness, or a 'substantially verbatim recital' of an oral statement made by a government witness."  *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) (quoting 18 U.S.C. § 3500) (rejecting argument that Government should have produced 302s so defendant could use them to impeach).  While the Government

14

voluntarily produced the 302s, it maintains that they do not comply with the Jencks Act. *See* Gov't Mot. [94] at 1–2. Defendants have not suggested otherwise and have identified no statements that would satisfy the Act.

Even if the 302s are not witness statements, they can be used in certain ways—like refreshing a witness's recollection—but courts have found that because they are FBI interview reports and not witness statements, they may not be used to impeach the person interviewed. *See United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness, it] . . . was properly rejected as a prior inconsistent statement").

While Defendants oppose this motion, they offer no legal authority to suggest that the Government's position is wrong. Indeed, Banks acknowledges that "[t]he legal authority cited by the government appears to be correct on this point." Banks Resp. [136] at 1. Defendants instead suggest that the motion should be denied because it is overly broad and there may be 302s that could be admitted. For example, Owens says "the Court should hear testimony before deciding: (a) the extent to which Owens can cross-examine government witnesses using 'the contents' of 302s; and (b) whether 302s should be published to the jury or admitted into evidence for any purpose." Owens Resp. [132] at 2. But that's what an in limine ruling would do. And allowing Defendants to discuss the contents before the jury would raise a substantial risk of jury confusion and unfair prejudice if the Court then sustained the Government's objection and told the jury to ignore what it just heard. Accordingly, the motion [94] is granted. If a Defendant believes the contents of a 302 can be offered or used to impeach, he must raise the issue outside the jury's presence.

15

D.      Merits Arguments About Official Acts [95]

The Government moves to exclude evidence and argument about the merits of the official acts at the heart of this bribery case.  Those alleged acts include "voting in favor of the road closure needed for the hotel development project and directing a city employee to move the Request for a Statement of Qualifications ('RFQ') submission deadline up to April 15."  Gov't Mot. [95] at 1.

The Government anticipates Defendants will try to argue that these alleged acts "were good for the community or otherwise meritorious and, as such, would have been performed irrespective of the alleged bribery scheme involving the confidential human sources ('CHSs')." *Id.*  It therefore seeks to exclude evidence and argument from Defendants that:

> (1) they could not have committed [the crimes in the indictment] because their scheme would not have changed the outcome of the process (*i.e.*, they would have taken the same actions irrespective of the bribe payments), or (2) because the Defendants' actions were not harmful to the Jackson community, they cannot be convicted [of] the crimes with which they are charged.

*Id.* at 6.

This presents a different nullification issue.  As the Government notes, "a defendant charged with extortion cannot ask the jury to ignore the extortive acts and rely simply on the lawfulness of the act for which the extortion is performed." *United States v. Reeves*, 892 F.2d 1223, 1226 (5th Cir. 1990); *see City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid.  (That is frequently the defense asserted to a criminal bribery charge—and though it is never valid in law, it is often plausible in fact.")); *see also* Gov't Mot. [95] at 2.

16

Defendants agree to a point, again noting that "it is improper to argue for jury nullification." Lumumba Resp. [125] at 2; *see also* Banks Resp. [139] at 2 (same); Owens Resp. [133] at 1 (same). But they also note that "[b]ribery under 18 U.S.C. § 666 and honest services wire fraud under 18 U.S.C. §§ 1343 and 1346 are specific-intent crimes." Lumumba Resp. [125] at 1; *see also* Owens Resp. [133] at 1. And they each state that evidence surrounding the alleged official acts speaks directly to their knowledge and intent, among other things. *See* Lumumba Resp. [125] at 3, Owens Resp. [133] at 3; Banks Resp. [139] at 2–3.

Based on those arguments, the Government pivots somewhat in reply, acknowledging Defendants' "right to present their defense while also preventing jury confusion." Gov't Reply [144] at 2. It therefore asks the Court to (1) "limit the evidence regarding the merits of the co-conspirators' official acts to the evidence intrinsic to the Defendants' bribery scheme"; (2) preclude nullification arguments and evidence; and (3) "instruct the jury that:

> (1) it is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value and (2) it is not a defense that the offer or promise of anything of value was made to the public official in exchange for an official action that is actually lawful, desirable, or even beneficial to the public."

*Id.* at 2–3.

First, the Court grants the motion to the extent that it seeks to preclude nullification evidence and argument suggesting that the alleged official acts were good for the public and would have happened anyway. Any such issues must be addressed at sidebar. Second, the Court lacks legal and factual context to rule on the Government's request to limit evidence "intrinsic to the Defendants' bribery scheme." *Id.* at 2. The intrinsic/extrinsic issue was not briefed in the Government's motion, so Defendants offered no response. *See Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse

to consider arguments raised for the first time reply briefs."). Nor has the Government cited any cases considering the point. And it has not identified the extrinsic evidence related to the merits of the disputed official acts. In any event, it seems that such evidence—if offered—could be handled with a timely objection. Finally, the Government may well be correct that an instruction like those it cites could be appropriate. That issue will be addressed at trial.

In sum, the Court grants this part of the motion to the extent that it excludes jury-nullification evidence or arguments, denies the motion to the extent that it goes beyond that issue, and will consider proposed jury instructions at trial, whether submitted as limiting instructions or during the final charge conference.

E.    Owens Motion in Limine [98]

Owens essentially argues that the Government inappropriately targeted him and then used alcohol and other inducements to obtain evidence supporting the charges. *See* Owens Mot. [98] at 2. He seeks to exclude nine categories of evidence. With three exceptions, the arguments speak to the weight of the evidence and are denied.

1.    Statements from Owens About Influence (Subjects 1–3)

Owens seeks to exclude evidence supporting the claim in the indictment that he "touted his 'influence' and 'ability to purchase the support of public officials in the City of Jackson.'" *Id.* at 3 (citing Indictment [3] ¶ 23); *see id.* (citing Indictment [3] ¶ 24 (characterizing his position as district attorney as "part time job")); *id.* at 4 (citing Indictment [3] ¶ 27 ("[T]here's only one me.")). Owens claims that every politician has influence, he didn't offer to "purchase" support, and his statements are not "relevant to bribery." *Id.* at 3. He relies on Rule 403, claiming this evidence will confuse the jury. *Id.* at 1. Under that rule, relevant evidence may be excluded "if

its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] confusing the issues."  Fed. R. Evid. 403.

The motion is denied as to these subjects.  The statements Owens made about his influence and his ability to use the district-attorney position to gain influence are intertwined with the bribery charges.  Plus, the jury will hear recorded statements related to these issues, so if the Government mischaracterizes them in its argument, Owens can make a contemporaneous objection.  In any event, the argument goes to weight, and these statements are not so confusing that an in limine ruling is required.

2.      Statements from Owens About the Development (Subjects 4–5)

Owens next seeks to exclude allegations contained in paragraph 28 of the indictment. Owens Mot. [98] at 4.  Based on that paragraph, he claims the Government "seeks to mischaracterize the hotel project as Owens's idea" and seeks to mislead the jury by "creating the impression that the RFQ had value when it did not." *Id.*  The paragraph he cites states in relevant part:

> Owens informed the Developers that the City of Jackson would soon issue an
> RFQ for the downtown development project.  The Developers expressed interest
> in obtaining the downtown development project for themselves and noted their
> desire to secure the long-term support of the City Council.

Indictment [3] ¶ 28.

Simply put, the indictment doesn't seem to suggest that the hotel project was Owens's idea. *Id.*  And nothing in the present record implies that it was.  The record instead indicates that this was a sting operation in which agents posed as hotel developers pitching the hotel project. Consistent with that, the Government submits in response that it has no intention to offer argument or evidence "attributing the genesis for the idea of the hotel development project to Owens."  Gov't Resp. [121] at 7.  Given that position, this issue is granted.

19

As to evidence that the RFQ had value, the cited paragraph again doesn't seem to make the point Owens asserts. But even if it did, the transactional amount is an essential element of the charges under 18 U.S.C. § 666(a), and the jury may consider whether facts related to the RFQ speak to that and other elements. Owens's disagreement with the Government's characterization of the evidence doesn't make the evidence inadmissible. The argument goes to its weight, and the motion is therefore denied as to this subject as well.

       3.      Statements from Owens that Might Inflame the Jury (Subjects 6–9)

Owens hopes to exclude statements attributed to him in paragraphs 28, 29, 33, and 43 of the indictment that he believes were included to "inflame the jury." Owens Mot. [98] at 4; *see id.* at 5. He never denies making the statements but submits that they are from "drunken rant[s]" and are not probative of bribery. *Id.* at 4; *see id.* at 5. He therefore seeks exclusion under Rule 403.

As an initial point, most statements in these paragraphs are highly probative of the bribery and money-laundering charges. For example, in paragraphs 28 and 29, Owens allegedly explains why the city council members should not be initially paid the full amount they demand. Indictment [3] ¶¶ 28–29. He says such statements are not "probative of bribery" because they "do not mention the hotel project, votes, or any quid pro quo." Owens Mot. [98] at 5. But a jury could easily find that statements explaining how to pay off public officials do relate to bribery. In paragraph 33, he allegedly tries to convince the agents that no matter how dirty the money is, he can launder it. Indictment [3] ¶ 33. That's relevant to the money-laundering charge. And so is paragraph 43. There, Owens appears to explain why it's better to comingle money with money at the DA's office than keep it at his home. *Id.* ¶ 43.

The statements also indicate that he has experience with bribery and money-laundering schemes. For instance, he is quoted in paragraph 29 as saying, "We never give them the asking price." *Id.* ¶ 29. Past experience could also be inferred from the statements quoted in paragraphs 28, 33, and 43. Thus, these statements are probative of predisposition—an issue for which he has opened the door by asserting entrapment.

Owens says though that post-inducement conduct cannot show predisposition. Owens Reply [148] at 3. He relies heavily on *United States v. Baez*, an unpublished Second Circuit case affirming the admission of evidence about a post-inducement gun sale because it showed the defendant's "prompt availment." 761 F. App'x 23, 26 (2d Cir. 2019). Owens argues that this means all post-inducement evidence must relate to "prompt availment." Owens Reply [148] at 3. But even if binding, *Baez* does not go that far. And even if it did, the court never addresses post-inducement *statements* that reflect pre-inducement state of mind.

The Second Circuit did address that question in *United States v. Cromitie*, a published opinion that distinguished pre-inducement conduct from pre-inducement statements:

> Of course, what a defendant says after contacted by agents is generally admissible to prove predisposition because, although some post-contact *conduct* might be the product of inducement, it will be a rare situation where a defendant can plausibly claim that the inducement caused him to *say* something that evidenced predisposition.

727 F.3d 194, 209 (2d Cir. 2013); *id.* at 217 (affirming conviction and finding that post-inducement statements reflected "a pre-existing design to commit terrorist acts"); *accord United States v. Jimenez*, 552 F. App'x 51, 55–56 (2d Cir. 2014) (affirming admission of post-inducement statements reflecting predisposition); *United States v. Woolaston*, No. 18-CR-212 (AJN), 2020 WL 91488, at *7 (S.D.N.Y. Jan. 7, 2020) (admitting post-inducement statements

because "language could also reasonably be interpreted as suggesting an ease and familiarity with drug trafficking"), *aff'd*, No. 20-4233-CR, 2022 WL 905404 (2d Cir. Mar. 29, 2022).

So too here.  A reasonable jury could conclude that Owens's alleged statements acknowledge prior bribery and money-laundering experience and familiarity.  So even if post-inducement, they would still be probative of predisposition.

As for "unfair prejudice" under Rule 403, the Government points out that Owens's use of crude language to convey his points does not make the statements "unfairly prejudicial."  Gov't Resp. [121] at 9; *see id.* at 8.  For the most part, the Court agrees, but there are statements that require a closer look.

First, in the block quoted statement in paragraph 29, Owens is quoted as saying, "I buy p&%$y, I buy cars, I buy cows, I buy drugs, whatever."  Indictment [3] ¶ 29.  The point he appears to make is that when buying things, he never pays the asking price and would not pay the council members their asking price.  Stating that he buys cars and cows makes that point, so there is little added probative value in the illicit purchases he mentions.  There may, however, be some value under Rule 404(b) as it relates to predisposition.  But at this point, the Government has not demonstrated that the evidence would pass the *Beechum* test.  *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978).  The Court will need to hear more before finding that this potentially prejudicial evidence can survive that test.  This much of the motion is granted.

The only other statement requiring discussion is from paragraph 43 when Owens states that if he was found with $1 million in his home, "[t]he regular people who vote for me . . . they can't count that much money."  Indictment [3] ¶ 43.  This derogatory statement about his supporters—some of whom may be on the jury—raises a risk of unfair prejudice while adding little probative value.  The Government has not adequately explained why it should be admitted

over Owens's Rule 403 objection.  So that statement should also be redacted.  Otherwise, the motion is denied.

IV.     Conclusion

The Court has considered all arguments.  Those not specifically addressed would not have altered the outcome.  For the reasons stated above, the Court grants Motion [94], grants in part and denies in part Motions [92, 95, 98], and denies Motion [90].

**SO ORDERED AND ADJUDGED** this the 14th day of May, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE