UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                              CRIMINAL NO. 3:24-CR-103-DPJ-LGI

JODY E. OWENS II, ET AL.

ORDER

This criminal matter is before the Court on Defendant Chokwe Antar Lumumba's Motion

to Dismiss the Indictment [100] and Defendant Jody E. Owens II's Motion to Dismiss certain

counts in the Indictment [97].  As explained below, the Court denies both motions.

I.      Background

A grand jury charged Defendants Jody E. Owens II, Chokwe Antar Lumumba, and Aaron

B. Banks in an 11-count indictment.  Indictment [3].  The counts include conspiracy, federal

bribery, racketeering, wire fraud, money laundering, and false statements, though not each

Defendant was charged with each count.  *Id.* at 20–31.

According to the indictment, from about October 16, 2023, to roughly May 23, 2024,

Owens "conspired with" Lumumba, Banks, and others "to carry out a bribery scheme to enrich

themselves."  *Id.* at 1.  The object of the alleged scheme was to collect bribes from developers

(undercover federal agents) in exchange for the City of Jackson's approval of a hotel project in

downtown Jackson, Mississippi.  *Id.* at 22.  The Government alleges each Defendant used his

position of authority "to benefit and enrich themselves through bribery."  *Id.*

Lumumba moved to dismiss on February 27, 2026.  *See* Mot. [100].  Owens also moved

to dismiss—his second such motion—that same day.  *See* Mot. [97].  The Government filed

responses opposing both motions.  *See* Gov't Resp. [119]; Gov't Resp. [118].  Lumumba replied [140], Owens did not.

II.    Analysis

    A.    Lumumba Motion [100]

Lumumba says the indictment must be dismissed for three reasons.  First, he claims the indictment materially misstates the facts and thus misled the grand jury.  Mot. [100] at 4.  Next, he argues that the indictment fails to state an offense because it does not allege that he committed any "official act."  *Id.* at 13.  Finally, he claims the Government cannot meet the necessary transactional amount for the federal program bribery counts.  *Id.* at 18.

Before addressing those arguments, some background is necessary.  On January 31, 2024, the City and the Jackson Redevelopment Authority (JRA) published a "Statement of Qualifications for Developer(s)" (SOQ).  *Id.* at 1.  This SOQ invited interested developers to submit information about their size, experience, and portfolio to a joint City/JRA committee.  *Id.* at 2 (citing SOQ [100-1] at 1).  From this information, the Committee would score submissions and determine whether any interested developers met the criteria to develop a project known as the "Downtown Mix Use Development, City Project No. 2025."  SOQ [100-1] at 1; *see* Mot. [100] at 6–7.  As explained in the indictment, this development project was central to the bribery scheme.  *See* Indictment [3] ¶ 1.  It was this project that the FBI's undercover developers pursued and that Owens, allegedly, facilitated bribes to support.  *Id.*

On April 12, 2024, Lumumba placed a phone call instructing a City employee to "move the RFQ submission deadline to April 15, 2024."  *Id.* ¶ 56; *see* Mot. [100] at 9.  "Lumumba acknowledges that he placed this phone call."  *Id.* at 14.  But he says the indictment's description of the phone call amounts to false testimony and insists that it does not constitute an "official

act." Mot. [100] at 13; *see id.* at 4. The Court will consider both arguments, but neither warrant dismissal.[1]

        1.      Grand-Jury Issues

Lumumba charges the Government with presenting three false statements to the grand jury through the indictment. A defendant may move to dismiss an indictment based on error in the grand-jury proceeding. *See* Fed. R. Crim. P. 12(b)(3)(A)(v). But "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." *Bank of N.S. v. United States*, 487 U.S. 250, 254 (1988). When a defendant alleges the government presented false testimony, "the indictment may be dismissed only if the [false] testimony is knowingly sponsored by the Government and material to the decision to indict." *United States v. Forte*, 65 F. App'x 508, 2003 WL 1922910, at *6 (5th Cir. 2003) (citing *United States v. Strouse*, 286 F.3d 767, 773–74 (5th Cir. 2002)). The defendant carries the burden of proving these things. *United States v. Lopez*, 426 F. App'x 260, 264 (5th Cir. 2011) (finding defendant failed to meet his burden of proving government knowingly sponsored perjured grand-jury testimony).

Obviously, the disputed statement must first be false. *See Strouse*, 286 F.3d at 771 (first considering whether the government's witness perjured himself before grand jury). But the Fifth Circuit has "refused to adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that may later prove to be

---

[1] Lumumba makes much of the distinction between a "Request for Proposal and a Request for Statement of Qualifications." Mot. [100] at 5. He points to the indictment, which states that "[w]hile an RFP requires developers to submit detailed project proposals and bids, an RFQ [or SOQ] seeks only developers' credentials and portfolios." Indictment [3] ¶ 19. For purposes of these motions, any confusion over these terms is immaterial to the grand jury's decision to indict.

questionable." *United States v. Cessa*, 861 F.3d 121, 142 (5th Cir. 2017) (quoting *United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978)).

Even if false, the government must "knowingly sponsor" it, which turns on whether the government "had prior knowledge." *Strouse*, 286 F.3d at 775–76; *see also id.* at 772 (asking "whether the government knew of the perjury at the time it offered [the witness's] testimony before the federal grand jury"). And even then, it must still be material, which means it is "*capable* of influencing the [factfinder] on the issue before it." *Id.* at 771. The false statements "need not be material to any particular issue, but may be material to collateral matters that might influence the court or the jury in the decision of the questions before the tribunal." *United States v. Damato*, 554 F.2d 1371, 1373 (5th Cir. 1977); *see also United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009) ("Whether or not prosecutorial misconduct prejudiced a defendant depends on whether it affected the grand jury's decision to indict."), *quoted in Cessa*, 861 F.3d at 141). With those tests in mind, the Court considers the statements Lumumba addresses.

***Whether moving the SOQ deadline would "ensure" the fake developers' success.***
Lumumba first focuses on two paragraphs in the indictment claiming that his acts were committed to "ensure" the fake developers' success. Mot. [100] at 4–6. He begins with the indictment's "Overview" paragraph. According to him, it "falsely alleged that Lumumba's 'official action,' *i.e.*, directing the change of the deadline for the respondents' Statement of Qualifications submissions, was '***to ensure the approval of the [fake] Developers' proposed*** multi-million-dollar downtown Jackson ***development project***.'" *Id.* at 4 (quoting Indictment [3] ¶ 1) (brackets in motion). He then says that "[t]he government continued this false narrative by alleging that Lumumba's "***shortening the RFQ [sic: SOQ] deadline [was] to ensure the***

***Developers' proposed development project would be selected***." *Id.* (quoting Indictment [3] ¶ 72(d)) (brackets in motion).

Broadly, Lumumba's argument is that because this action could not—and did not— "ensure" the approval of the undercover developers' proposal, the statements are false. *Id.* at 8– 10. For example, Lumumba points to the SOQ criteria, *id.* at 7–8, the fact that other developers were still able to submit proposals, *id.* at 9, and the SOQ's language reserving "the right to reject any or all SOQs" or terminate negotiations, *id.* at 10–11 (citing SOQ [100-1] at 16).[2]

The Government contends that its language was neither false nor misleading because the Government never claimed that "any single official act would guarantee" success. Gov't Resp. [119] at 6. Rather, it frames Lumumba's call moving the SOQ deadline as "one act of what was expected to be many," *id.*, to further the overall scheme's goal—ensure that the undercover developers' proposal was selected, *id.* at 5 (citing as an example Indictment [3] ¶ 49).

To begin, Lumumba's argument takes the indictment's "Overview" out of context. The Indictment does <u>not</u> say that "Lumumba's official action [in making the call] . . . was 'to ensure the approval of the [fake] Developers' proposed" development. Mot. [100] at 4 (cleaned up) (citing Indictment [3] ¶ 1). The cited paragraph instead lists the alleged co-conspirators and says they took bribes "in exchange for *their* agreement to take official action to ensure the approval of" the development. Indictment [3] ¶ 1 (emphasis added). That's important context for what the word "ensure" means in this indictment. The "Overview" anticipates many acts by alleged

---

[2] Lumumba asks the Court to take judicial notice of these facts under Federal Rule of Evidence 201. Mot. [100] at 6. But he cites cases interpreting Federal Rule of Civil Procedure 12(b)(6) to support that request. *See* Reply [140] at 3. Because the motion fails anyway, the Court will assume it can consider the facts Lumumba offers.

co-conspirators with a common goal of ensuring success, it does not say Lumumba's call was alone capable of ensuring success.

Lumumba's second quote is accurate. Paragraph 72(d) does focus on Lumumba's alleged attempts to "ensure that the Developers' proposed development project would be selected." *Id.* ¶ 72(d); *see* Mot. [100] at 4. Viewed in isolation, this would be misleading, but the indictment never says this one act was enough to ensure success—it was part of a bigger story. And consistent with the "Overview," the indictment describes a collection of acts and anticipated acts allegedly aimed at ensuring success. Indictment [3] ¶¶ 39, 49, 74–85. Lumumba has not suggested that the Government in any way hid this alleged "multi-pronged bribery scheme" from the grand jury. Gov't Resp. [119] at 5.

So read in context, the indictment does not falsely suggest that moving the SOQ deadline "ensure[d]" selection of the fake development proposal, it was just one act with that shared goal. Mot. [100] at 4. While the Government admits it could have phrased paragraph 72(d) "more artfully," Gov't Resp. [119] at 6, courts will not dismiss an indictment based on statements "that may later prove to be questionable," *Cessa*, 861 F.3d at 142. *See also United States v. Stearman*, 981 F.2d 1256, 1992 WL 386839, at *3 (5th Cir. 1992) (finding no government misconduct when the government witness had factual basis for their grand jury testimony). These statements, read together, were not false.

Even if they were, Lumumba does not show they could influence the grand jury's decision to indict—i.e., that they were material. *Cessa*, 861 F.3d at 141. The Government notes that the grand jury heard "hours of testimony . . . saw dozens of exhibits and were given a lengthy and thorough summary presentation of the case." Gov't Resp. [119] at 6. And at no point did the Government argue that Lumumba's phone call "was anticipated to be his one and

only official act to benefit the [undercover developers]." *Id.* Rather, the grand jury heard evidence that Lumumba was "prepared to do more." *Id.* Lumumba does not dispute these points in his reply. *See* Reply [140] at 3–4. Nor does he address the Government's materiality arguments. Lumumba has not met his burden to show a *Strouse* violation related to the word "ensure" in paragraphs 1 and 72(d) of the indictment.

**Completion date requirements.** Next, Lumumba argues the Government lied when it "falsely claimed that the downtown . . . project was required to be completed by June 30, 2025," as a condition of the City's loan from the U.S Department of Housing and Urban Development (HUD). Mot. [100] at 4 (citing Indictment [3] ¶ 16). Here's the precise averment: "Pursuant to the terms of the loan, the City of Jackson has until June 30, 2025, to complete its downtown development project." Indictment [3] ¶ 16.

Lumumba says this is false because the City had been "granted an extension" and repaid the loan in full by December 2025. Mot. [100] at 11; *see* Reply [140] at 5 (citing HUD Letter [140-1] at 5 (signed March 8, 2019)). He contends that by making this statement, the Government was implying that the City "was facing impending financial ruin." Mot. [100] at 11. And he concludes that had the grand jury known the City was not "facing undue financial pressure from an impending loan due date—they might have reached a different conclusion regarding the charges." *Id.* at 12.

The Government says it checked the dates with HUD and an extension was never mentioned. Gov't Resp. [119] at 7. Thus, it claims it didn't "knowingly sponsor" false testimony. *Strouse*, 286 F.3d at 775–76 (whether testimony is "knowingly sponsore[d]" turns on whether Government "had prior knowledge"); *see* Gov't Resp. [119] at 7. Lumumba responds

that the argument goes beyond the four corners of the indictment, Reply [140] at 5, but cites no

authority and does not explain how the Court could otherwise determine "prior knowledge."

In any event, the burden is on Lumumba to prove the elements of his misconduct claim.

*Lopez*, 426 F. App'x at 264.  And the Fifth Circuit has "refuse[d] to adopt the proposition that,

absent perjury or government misconduct, an indictment is flawed simply because it is based on

testimony that may later prove to be questionable."  *Cessa*, 861 F.3d at 142.  Lumumba has not

shown that the Government knowingly sponsored a false statement.

Nor has he met his burden to prove materiality.  The Government contends that no grand-

jury witness discussed this date and no one advanced the "narrative" that Lumumba moved the

SOQ deadline because he was desperate to secure a developer.  Gov't Resp. [119] at 7.  Indeed,

the Government's theory is that Lumumba did not have the City's "best interests in mind *at all*

when he took that $50,000."  *Id.* at 8.  Lumumba did not respond to these arguments.  *See* Reply

[140] at 5–6.

He did, however, note that the Government chose to include the HUD loan completion

date in "a subcategory of the indictment that was captioned '*Federal Funding and the Downtown

Development Project*.'"  *Id.* at 6.  Lumumba says "[i]t is therefore disingenuous, at best, to assert

that the false HUD loan allegation is not material to this case."  *Id.*  But "material to the case" is

different from materiality under *Strouse*.  And while Lumumba claims the grand jury "might

have reached different conclusion" if it knew the City was "not facing undue financial pressure

from an impending loan due date," Mot. [100] at 12, any such connection is unclear and

underdeveloped.  Given what the grand jury heard, he has not established that an errant deadline

for the HUD loan could have changed the jury's decision to indict for allegedly accepting bribes.

*Cessa*, 861 F.3d at 141.

2.      No Official Act

Lumumba next says the indictment fails to state a claim.  A motion to dismiss on this basis falls under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) and tests the sufficiency of the indictment.  *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).  When reviewing such a motion, the Court must "take the allegations of the indictment as true and . . . determine whether an offense has been stated."  *Id*. (quotation marks omitted).  But "[i]t must be remembered that in testing the sufficiency of an indictment, a court must not pierce the pleadings and make a premature resolution of the merits of the allegations."  *United States v. Cadillac Overall Supply Co*., 568 F.2d 1078, 1082 (5th Cir. 1978).  That is to say, the Court considers such a motion "based on the resolution of a legal question in the presence of *undisputed* facts."  *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005) (emphasis added).

Lumumba argues that the indictment is insufficient because it fails to allege that he committed any "official act."  Mot. [100] at 13.  He therefore seeks dismissal of any count requiring proof of "an 'official act' in violation of 18 U.S.C. §§ 201(a)(3), 666, 1343, and 1346, along with the charges in the indictment arising from violations of these offenses."  *Id.* at 14.  The indictment charges these offenses against him:  Count 1 (conspiracy under 18 U.S.C. § 371); Count 5 (federal program bribery under 18 U.S.C. § 666(a)(1)(B)); Count 7 (Travel Act under 18 U.S.C. § 1952(a)(3)); Count 9 (honest-services fraud under 18 U.S.C. §§ 1343, 1346); and Count 10 (money laundering under 18 U.S.C. § 1956(a)(1)(B)(i)).  Indictment [3] at 20, 26–30.[3]

None of these counts are based on statutes that mention "official acts."  But Lumumba argues that the charge under § 666 should be construed to include that element.  Mot. [100] at

---

[3] Count 4 factually mentions Lumumba, but it appears that this count is limited to Owens. Indictment [3] ¶¶ 78–79; se*e also* Gov't Resp. [119] at 1 (stating that Count 4 is brought against Owens).

15–16.  Section 666(a)(1)(B) criminalizes "an agent of an organization, or of a State, local, or

Indian tribal government, or any agency thereof" who

> corruptly solicits or demands for the benefit of any person, or accepts or agrees to
> accept, anything of value from any person, intending to be influenced or rewarded
> in connection with any business, transaction, or series of transactions of such
> organization, government, or agency involving anything of value of $5,000 or
> more.

18 U.S.C. § 666(a)(1)(B).

Though this section never mentions "official acts," Lumumba argues that it should be

inferred based on the official-acts requirement in § 201, which prohibits bribing federal officials.

As he points out, the Fifth Circuit has stated that "§ 666 tracks closely with § 201(b)'s bribery

provision."  Mot. [100] at 16 (quoting *United States v. Hamilton*, 46 F.4th 389, 397 (5th Cir.

2022)).  That's true.  "Section 666 grew out of a circuit split over" whether § 201 included state

and local officials.  *Hamilton*, 46 F.4th at 394; *see id.* at 391 (holding that § 666 requires proof of

quid pro quo).

Lumumba thus says, "Section 201 . . . will be used with respect to . . . § 666 to analyze

the charges alleged in the indictment."  Mot. [100] at 16.  Assuming § 201 applies, Lumumba

focuses on its definition of an official act as construed in *McDonnell v. United States*, 579 U.S.

550 (2016).  *See id.* at 17.  Section 201(a)(3) states:

> [T]he the term "official act" means any decision or action on any question, matter,
> cause, suit, proceeding or controversy, which may at any time be pending, or
> which may by law be brought before any public official, in such official's official
> capacity, or in such official's place of trust or profit.

18 U.S.C. § 201(a)(3).  And *McDonnell* held that an official act is

> a decision or action on a "question, matter, cause, suit, proceeding or
> controversy."  The "question, matter, cause, suit, proceeding or controversy" must
> involve a formal exercise of governmental power that is similar in nature to a
> lawsuit before a court, a determination before an agency, or a hearing before a

committee.  It must also be something specific and focused that is "pending" or "may by law be brought" before a public official.

579 U.S. at 574 (citing 18 U.S.C. § 201(a)(3)); *see also id.* (holding that "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit that definition of 'official act'").  Lumumba likens the call he admittedly made to the examples in *McDonnell*, describing it as "ministerial at best" and saying it did not "involve a formal exercise of government power" as *McDonnell* requires.  Mot. [100] at 17.

Before settling this dispute, the Court must first consider whether § 201(a)(3) and *McDonnell* apply.  That is, does § 201(a)(3)'s "official act" definition apply to § 666?  Lumumba says it does:  "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it."  Mot. [100] at 15 (quoting *Sekhar v. United States*, 570 U.S. 729, 732–33 (2013) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))).

But that's not what happened.  When Congress adopted § 666 to extend bribery prohibitions to state and local officials, it chose not to transplant § 201's "official act" requirement and definition.  Section 666 never mentions that term.  Indeed, Congress defined "official act" in § 201(a)(3) "[f]or the purpose of this section."  18 U.S.C. § 201(a).  That section did not reference § 666, and § 666 does not mention § 201(a).

"Rather, § 666 uses more expansive language encompassing influence and rewards 'in connection with any business, transaction, or series of transactions' of the relevant federally-funded organization."  *United States v. Crisler*, No. 25-60099, 2026 WL 608334, at *4 (5th Cir. Mar. 4, 2026) (citing *United States v. Lindberg*, 39 F.4th 151, 171–74 (4th Cir. 2022)).  Based on this distinction, the Fifth Circuit has rejected an official-act element for § 666, noting that the

circuit has "never held that § 666 incorporates an 'official act' requirement of the kind set out in 18 U.S.C. § 201(a)(3) with respect to bribery of federal officials." *Id.*

*Crisler* is unpublished and therefore nonbinding. But it is not the only time the Fifth Circuit has reached the same conclusion. For example, in *Winfield v. United States Probation & Pretrial Services*, the court held that "a bribery offense under § 666 is not restricted to 'official acts,' as defined in § 201(a)(3) and interpreted by *McDonnell*." 810 F. App'x 343, 344 (5th Cir. 2020) (per curiam) (observing that *McDonnell* "did not delimit, consider, or invalidate an element of § 666"); *see also United States v. Marmolejo*, 89 F.3d 1185, 1191–94 (5th Cir. 1996) (discussing, pre-*McDonnell*, the "broad language" of 18 U.S.C. § 666, which "reaches acts of bribery involving transactions of substantial value," including transactions for "intangibles"), *aff'd sub nom.*, *Salinas v. United States*, 522 U.S. 52 (1997)).

Nor is the Fifth Circuit alone in this construction. *See, e.g.*, *Lindberg*, 39 F.4th at 165–69; *United States v. Roberson*, 998 F.3d 1237, 1245–47 (11th Cir. 2021); *United States v. Np Lap Seng*, 934 F.3d 110, 131–38 (2d Cir. 2019); *United States v. Porter*, 886 F.3d 562, 565–66 (6th Cir. 2018). Lumumba did not reply to the Government's argument that § 666 contains no "official act" requirement.[4]

That said, § 666 still requires a quid pro quo arrangement, a simple gratuity will not suffice. *See Crisler*, 2026 WL 608334, at *3 (citing *Snyder*, 603 U.S. at 8; *Hamilton*, 46 F.4th at

---

[4] Lumumba cites dicta from *Snyder v. United States*, a case addressing "whether 18 U.S.C. § 666(a)(1)(B) makes it a federal crime for state and local officials to accept gratuities for their past official acts." 603 U.S. 1, 10 (2024); *see* Mot. [100] at 14. The *Snyder* Court was not asked to consider whether § 666 has an "official act" requirement as defined in § 201(a) and *McDonnell*. In any event, the *Crisler* court was aware of and addressed *Snyder* in another context. 2026 WL 608334, at *3. Yet it still found that § 666 does not incorporate § 201's "official act" definition. *Id.* at *4.

395).  But what is given in exchange for the bribe under § 666 is not "of the kind set out in 18 U.S.C. § 201(a)(3)."  *Id.* at \*4.  So how is the quid pro quo component defined if not by § 201(a)(3)'s "official act" definition?  The parties and the Court will need to address that in the jury instructions.

But for now, dismissal would be inappropriate because however defined, Lumumba's motion would require the Court to resolve factual disputes, which it may not do under Rule 12(b)(3)(B)(v).  *Flores*, 404 F.3d at 325.  Even *McDonnell* defines "official acts" under § 201(b) to include "agree[ing]" to "us[e] his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official."  579 U.S. at 574.  There is no dispute that Lumumba made a call to a City employee and was able to accelerate the SOQ deadline.  The Government says he did so in a way that could have limited the developers' competition.  These are fact questions for the jury.

In addition, the indictment is not based solely on that one call.  It alleges that Lumumba accepted a bribe "knowing and understanding that the money was from the Developers, and that it was being offered in exchange for official action from LUMUMBA in favor of the Developers' proposed development project."  Indictment [3] ¶ 4; *see also id.* ¶¶ 39, 49.  To that, Lumumba says future agreements would not be enough because the City and the JRA "held exclusive authority to make all decisions related to the Convention Center."  Reply [140] at 7; *see also* Mot. [100] at 18.  In other words, he lacked official authority.  But again, even *McDonnell* defines "official acts" under § 201(b) to include "agree[ing]" to "us[e] his official position to exert pressure on another official to perform an 'official act.'"  579 U.S. at 574.  And the

13

indictment alleges that he was otherwise in a position to "do damage" to the proposal, "mak[ing] it difficult" for the developers.  Indictment [3] ¶ 39.

At bottom, these are all fact questions.  "It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged quid pro quo."  *McDonnell*, 579 U.S. at 572–73.  And as noted, factual disputes cannot be decided under Rule 12.  *Flores*, 404 F.3d, at 324.  The Court must instead "take the allegations of the indictment as true and . . . determine whether an offense has been stated."  *Kay*, 359 F.3d at 742.  Under those standards, the Court finds Lumumba's "no official act" argument unpersuasive and will not dismiss the indictment on this ground.

        3.        Transactional Amount

Lumumba finally argues that the indictment fails to state an offense (and must therefore be dismissed) because the Government cannot meet the transactional element for federal program bribery.  Mot. [100] at 18.  Under § 666(a)(1)(B), the alleged bribe must be "in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more."  18 U.S.C. § 666(a)(1)(B).

According to Lumumba, the $50,000 payment he received "is not a sufficient indication of [the] value of the business or transaction sought to be influenced."  Mot. [100] at 18.  He primarily relies on *United States v. Richard*, when, by Lumumba's interpretation, the Fifth Circuit expressed "concern" about federal agents' ability to circumvent the $5,000 statutory threshold by choosing an artificially high bribe amount.  *See id.* at 19 (citing 775 F.3d 287, 294 n.1 (5th Cir. 2014)).  *Richard* did not rule on that issue.  It merely noted that the defendant waived this argument by raising it "for the first time at oral argument."  *Richard*, 775 F.3d at 294

n.1. *Richard* then held that "the value of § 666's transactional element may be satisfied by looking to the amount of the bribe." *Id.* at 294 (citing *Marmolejo*, 89 F.3d at 1194).

Lumumba also relies on *United States v. Duvall*, holding that the bribe amount need not exceed § 666's $5,000 figure to violate the statute. *See* Mot. [100] at 20 (citing 846 F.2d 966, 976 (5th Cir. 1988)). That's true. But *Duvall* does not conflict with *Richard* or other cases saying the transactional element can be determined based on the value of the bribe. *Richard*, 775 F.3d at 294. In other words, a bribe below $5,000 can trigger § 666 if the transaction is otherwise shown to exceed $5,000, but the bribe amount can still be a proxy meeting this transactional element.[5]

As a broader point, the indictment alleges that Owens and his co-defendants had a heavy hand in setting the price (it didn't just come from the undercover agents). For example, the indictment—which the Court must assume is true under Rule 12—states that Owens and Smith "negotiated an upfront payment of $250,000." Indictment [3] ¶ 25; *see also id.* ¶ 27 (stating that Owens accepted $125,000); *id.* ¶ 38 (stating that Owens suggested monthly $5,000 payments to Lee); *id.* ¶ 43 (setting price for Lumumba bribe); *id.* ¶ 4 (Lumumba accepted $50,000 bribe). This all indicates that Defendants saw the value as exceeding $5,000. It is at least a fact question. Fact questions are not decided under Rule 12. *Flores*, 404 F.3d at 324.

For the reasons provided, Lumumba's motion to dismiss [100] is denied.

---

[5] *See also* Fifth Circuit Pattern Jury Instructions (Criminal) § 2.33B note (2019) ("The transactional element may be satisfied by looking to the amount of the bribe; thus, if the amount of the bribe is $5,000 or greater, the jury can reasonably conclude that the transactional element is satisfied." (citing *Richard*, 775 F.3d at 294)).

B.       Owens's Motion [97]

Owens seeks to dismiss "Counts 1 through 6 and Counts 8, 9 and 10 . . . because each of those counts rely on the commission of an official act by an elected state official . . . and because Counts 2 through 6 fail to meet the required $5000 value threshold."  Mot. [97] at 1.  Like Lumumba, Owens says these counts fail to state an offense because Lumumba's phone call moving the SOQ deadline was not an "official act," *id.*, and because the Government "will not be able to prove that the value of the transactions . . . meets the $5000 value threshold," *id.* at 2.  Thus, he makes the same arguments Lumumba raised in his motion.

First, as the Government observes, Owens lacks standing to move to dismiss counts in which he is not charged.  Gov't Resp. [118] at 3 (citing Counts 3 and 5 against Banks and Lumumba); *see United States v. Tanner*, 471 F.2d 128, 139–40 (7th Cir. 1972) (finding co-conspirators lacked standing to challenge count in which they were not charged).  Next, to the extent that he seeks to dismiss Count 8, the Travel Act violation, there is no official-act requirement for this offense.  *See* 18 U.S.C. § 1952.  Dismissal is denied as to these counts.

Second, Owens makes essentially the same official-acts and transactional-amount arguments as Lumumba.  Mot. [97] at 2.  He also claims that neither Lumumba nor any other co-conspirator committed or had authority to commit an official act.  *See id.* at 10–11 (arguing that Banks and Lee lacked authority to commit official acts).  The Government's response largely mirrors its response to Lumumba.  *See* Gov't Resp. [118] at 4–10.  Owens did not reply.  For the same reasons Lumumba's motion fails, and also for the reasons in the Government's response, Owens's motion likewise fails.  Owens raises fact questions that cannot be decided under Rule 12.  *Flores*, 404 F.3d at 324.

16

IV.     Conclusion

The Court has considered all the parties' arguments.  Those arguments not specifically addressed would not have altered the outcome.  For the reasons stated, Defendant Chokwe Lumumba's Motion to Dismiss [100] and Defendant Jody Owens's Motion to Dismiss [97] are denied.

**SO ORDERED AND ADJUDGED** this the 14th day of May, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE