IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                                          CRIMINAL NO. 3:24-cr-103-DPG-LGI

JODY E. OWENS II,
CHOKWE ANTAR LUMUMBA, and
AARON B. BANKS

**<u>GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE IMPROPER DEFENSES</u>**

The government moves to exclude evidence and argument regarding certain improper

defenses. Given the overwhelming evidence of the Defendants' misconduct on the audio and

video recordings in this case, and based on Defendant Jody E. Owens II's Motion to Dismiss

(ECF No. 75), the government can only speculate that all three Defendants hope to offer a

defense at trial that suggests that the government somehow entrapped the Defendants, a defense

aimed at jury nullification, or a defense that runs counter to the Rules of Evidence and governing

law. Allowing them to present such defenses would be improper as a matter of law, confuse the

jury, and distract from the real issues in the case.

ANALYSIS[1]

### I.    The Court Should Resolve the Legal Sufficiency of Affirmative Defenses

A district court may properly require a defendant who seeks to assert an affirmative

defense to make a pretrial offer of proof to demonstrate that the evidence in support of his

defense is sufficient as a matter of law to satisfy its essential elements. *See United States v.*

*Bailey*, 444 U.S. 394, 416 (1980). "The requirement of a threshold showing on the part of those

---

[1] Because the Court is aware of the factual and procedural history of this case, the government refers the Court to the factual background set forth in the government's response to Defendant Owens' Motion to Dismiss. *See* ECF No. 88 at 2–16.

1

who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility." *Id.* Rather, it reflects the need to "husband the resources necessary for that process" so that "the trial court and jury [are not] burdened with testimony" relating to a defense that cannot be established as a matter of law. *Id.* When a court rules on the availability of a defense in a motion in limine, it must "accept as true the evidence proffered by the defendants." *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002). That said, "where the evidence proffered in response to the motion in limine is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." *Id.* If, in response to this Motion, the Defendants cannot proffer sufficient evidence to satisfy each element of the asserted affirmative defense, the Court should preclude presentation of said defenses at trial.

The sufficiency of the Defendants' affirmative defenses will have important implications for trial. First, if the Defendants' affirmative defenses fail as a matter of law, then to permit them to argue them to the jury in their opening statements or to elicit testimony related to them during trial would be confusing and distracting . Second, the availability of the Defendants' affirmative defenses may affect the admissibility of evidence. For example, they may argue that evidence of prior good acts is admissible under Rules 404(b) or 405(b) to prove the second prong of an entrapment defense, lack of predisposition to commit crimes. *See United States v. Thomas*, 134 F.3d 975, 979–80 (9th Cir. 1998). Third, if the Defendants are seeking affirmative defenses, they are likely to request jury instructions on such defenses, which would, if improperly given, mislead the jury as to the applicable law. Finally, the viability of the Defendants' affirmative defenses will no doubt affect both sides' trial strategy. *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) ("A pre-trial ruling, if possible, may generally be the better practice,

for it permits counsel to make the necessary strategic determinations."). Because of the centrality of these issues to the trial, the Court can and should resolve the legal sufficiency of the Defendants' affirmative defenses, including that of entrapment, before trial.

**II.      The Court Should Preclude Evidence and Argument on Entrapment Defense**

Because the Defendants cannot meet their burden to show entrapment as a matter of law, the Defendants should be precluded from making any argument or introducing any testimony or evidence relating to entrapment at trial.

"[E]ntrapment is a relatively limited defense" that is rooted "in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of the proscribed offense, but was induced to commit them by the Government." *United States v. Russell*, 411 U.S. 423, 435 (1973). "Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." *Sorrells v. United States*, 237 U.S. 435, 454 (1932). Because the government has the authority to engage in a variety of law enforcement practices, including setting "trap[s] for the unwary criminal," neither the fact that the government "afford[ed] opportunities or facilities for the commission of the offense" nor "the mere fact of deceit" will "defeat a prosecution." *Russell*, 411 U.S. at 429, 435–36 (internal quotation marks and citations omitted). Rather, "it is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *Id.* at 436.

A valid entrapment defense has two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). To show lack of predisposition, the defendant must

point to some evidence of resistance on his part. *See United States v. Arditti*, 955 F.2d 331, 343 (5th Cir. 1992) ("Where there is no overwhelming evidence of serious resistance, and the defendant jumped in with both feet, the defendant is an eager, active participant and was therefore not entrapped."). The first step in a successful entrapment defense is to make a prima facie showing that "government conduct 'created a substantial risk that an offense would be committed by a person other than one ready to commit it.'" *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 197 (5th Cir. 1992) (quoting *United States v. Kang*, 934 F.2d 621, 624 (5th Cir. 1991)); *United States v. Johnson*, 872 F.2d 612, 620 (5th Cir. 1989). And unless the Defendants make such a prima facie showing with "hard evidence," the government need not prove the absence of entrapment beyond a reasonable doubt and the Defendants will not be entitled to an entrapment jury instruction. *United States v. Gonzalez-Perez*, 778 F.3d 3, 11 (1st Cir. 2015).

Key here, "[e]ntrapment cannot result from the inducements of a private citizen but must be the product of conduct by governmental agents." *United States v. Garcia*, 546 F.2d 613, 615 (5th Cir. 1977).

## A. Inducement[2]

The Defendants cannot meet their burden to show inducement. As for Owens, the recorded conversations that capture the planning and execution of the bribery scheme in this case over many months contain no statements by the confidential human sources ("CHSs") that can be characterized as an effort to persuade or pressure Owens to commit the charged bribery offenses. The government did not solicit Owens to *spearhead* a bribery scheme. Rather, Owens—a sophisticated District Attorney of a large city—initiated the scheme by suggesting that

---

[2] Because it is unclear whether any of the Defendants will raise an affirmative entrapment defense at trial, the government, in its reply brief, will address in particularity the predisposition and lack of inducement for each Defendant who claims they were entrapped.

he had a "bag of information" on the City Council and could get the CHSs votes. *See* ECF No. 88, Gov. Ex. 3. It was Owens who told the CHSs that they needed to "clean" and "spread" the money, and Owens who determined whom to pay, when to pay, how to pay, and how much to pay. *Id.* at Gov. Ex. 13. Moreover, the recordings reflect that Owens displayed no reluctance to commit his crimes. Although the CHSs presented the opportunity, Owens retained all the freedom to choose how to respond to that opportunity. The recorded conversations show that he chose to commit crimes and did so eagerly.

A showing of inducement will prove even more difficult for Banks and Lumumba. That is because Owens, who was not working for the FBI and was in fact a subject himself, was the facilitator and the coordinator for the bribe payments made to both Banks and Lumumba, while the CHSs took a backseat. As to Banks, it was Owens who identified Banks as someone who could be bought, and Owens who brought Banks into the fold. It was then Owens, on his own initiative and independent from the CHSs, who personally discussed and decided with Banks how much Banks would request from the CHSs. Together, they decided that Banks would request $50,000, which he then did. *Id.* at Gov. Ex. 11 and 12. And it was Owens who ultimately gave Banks an envelope with $10,000 cash inside, which Banks took without hesitating. Nor did Banks exhibit hesitancy when he received a protective detail or an offer employment for his daughter at the District Attorney's Office (paid for by the CHSs). To the contrary, Banks seemed to revel in his role in the scheme, telling the CHSs, after he received his bribe payment, that together they were going to make CHSs' goals happen and "there might end up being some

blood on the motherfucking table" in the process because he is "that motherfucker." Gov. Exs. 1 and 2.[3] He also, unsolicited, bragged to the CHSs about his power to hold up city projects. *Id.*

As for Lumumba, Owens was once again the one who decided to bring Lumumba into the scheme. That decision was despite the CHSs' own confusion as to how Lumumba was essential to the scheme in any way, given his lack of a vote. The CHSs played little to no role in getting Lumumba involved. Instead it was Owens who, on his own, helped convince Lumumba to trust the CHSs by, for example, telling Lumumba that he had done a background check on the CHSs to ensure that they were not FBI agents. It was Owens who, after having his own private conversations with Lumumba, determined that the best way to get Lumumba to accept bribe payments would be to route the CHSs' money through five $10,000 checks in the guise of "campaign contributions." Owens decided that the best place to make the handoff would be at a "fundraiser" in Florida, a trip which Owens insisted needed to involve having a lot of women around and a visit to a local strip club. And during the bribe itself, it was Owens who assured Lumumba that the bribe money had been delivered to him in a specific form so that it could be "filtered" through "several accounts." *See id.* at Gov. Ex. 24. Lumumba exhibited no reluctance in taking the money and never expressed any concern about taking the official act for which he took the money.

### B. Predisposition

With respect to predisposition, the Defendants run into similar hurdles. None of the Defendants expressed hesitation. The government did not deploy persistent inducement tactics. Though each Defendant took their time to warm up to and trust the CHSs, it did not take much

---

[3] Government Exhibits 1 and 2 are three segments of a recorded meeting that took place on March 28, 2024. between Owens, Banks, Marve Smith, and the CHSs. Those three segments have been combined into a single audio file and separated by short periods of silence.

for the CHSs to build trust after which each defendant showed their true colors. For Owens, it took a trip to Nashville and time for him to make sure that the CHSs were not, in fact, FBI agents. For Banks and Lumumba, it took some wining and dining in combination with Owens' personal endorsement of the CHSs' trustworthiness. Since the pressure of any inducement here, if any, was *de minimis* and the Defendants' responses were eager, even if wary of law enforcement detection, the Defendants' predisposition is manifest.

Though none of the Defendants had criminal convictions as of the time of bribery scheme, their predisposition and seeming familiarity with the ins and outs of bribery was nonetheless made evidence by their statements. All the Defendants clearly engaged in the bribery scheme for profit; they each stood to gain significant amounts of money in exchange for little effort on their end. And each was willing to do what it took to evade detection by law enforcement.

Owens made numerous statements from which any reasonable person could infer that this was not his first rodeo and that he knew how to avoid getting caught. For example, when discussing how much money was appropriate to give Banks, before anyone had yet been bribed in this scheme, Owens admonished the CHSs that "we never give them the asking price." *Id.* at Gov. Ex. 11. He also claimed that the reason he had businesses was "to clean" and "spread" money, to avoid detection. *Id.* at Gov. Ex. 13. One time, he went so far as to specifically mention the threat of federal prosecutors and how best to obscure the source of the bribe payment to Lumumba to avoid being prosecuted. *Id.* at Gov. Ex. 23.

Banks's his predisposition was evidenced by his conversation with Owens leading up to his request for the $50,000, demonstrating that he was ready and willing to solicit a bribe. In addition, when Owens handed him his $10,000 in cash, he inquired as to whether Banks was

"comfortable walking around" with the cash because it was not a "check like we normally do." *Id.* at Gov. Ex. 16. That statement could reasonably be interpreted as meaning that it was not Owens's first time facilitating a bribe to Banks. Owens and Banks, with the encouragement of the CHSs, also agreed that Banks would not talk about receiving that payment. Immediately after making the payment, Owens explicitly referenced, to Banks, Banks's prior allegation of bribery against ████████████████. *Id.* This warning dovetails with Owens' stated concerns to the CHSs earlier the same day that Banks might talk out of school about the payment. *Id.* at Gov. Ex. 15. Banks acknowledged that he understood the warning. *Id.* at Gov. Ex. 16.

Though Lumumba was certainly more careful with his words than Banks and Owens, he was no less ready and willing to take the bribe. He coordinated over several weeks with Owens to shield the true source of his bribe through a faux fundraiser and by accepting fraudulent checks. Moreover, Lumumba never evinced any hesitation to join the scheme, only the caution of an experienced politician who is no stranger to disguising his methods of wielding influence in exchange for financial gain.

Accordingly, none of the Defendants are entitled to assert an entrapment defense as a matter of law. The United States respectfully moves the Court for a pretrial ruling precluding them from doing so.[4]

---

[4] Even if the defense were to make a showing that the Court determines is legally adequate on the question of inducement, the government must then be permitted to present evidence relevant to predisposition and lack of inducement in its case-in-chief. At the conclusion of all the evidence, this Court would then ultimately determine whether the Defendants would be entitled to a jury instruction on entrapment. The government evidence disproving entrapment, however, may consist of other crimes and other act evidence, which will therefore become admissible as direct evidence of the offense itself and not just as other crimes evidence under Federal Rule of Evidence 404(b).

### III.    The Court Should Preclude Argument and Evidence Aimed at Jury Nullification

The government also seeks to preclude argument and evidence designed to encourage jury nullification. The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. Jury nullification has been disavowed by the courts. A corollary to that rejection is the refusal by courts to admit evidence that is relevant only in as much as it would support a jury nullification argument or verdict. *United States v. Crosby*, 713 F.2d 1066, 1074 (5th Cir. 1983) (following *Gorham* and affirming exclusion of evidence finding "similar irrelevance and potential for prejudice").

The government does not doubt that counsel for the Defendants are well acquainted with these principles and would not seek to knowingly violate them. But in an abundance of caution, the government specifically calls attention to the following topics that would, if explored before the jury, constitute an invitation to nullify: (1) government's charging decisions; (2) government's conduct; (3) government's motives; (4) resources and cultural issues; and (5) evidence of prior good acts of the Defendants. The Defendants should be precluded from presenting or eliciting evidence, comment, or argument concerning any of those areas, and defense counsel should instruct their witnesses accordingly.

### A.  Government's Charging Decisions

It is axiomatic that the purpose of a criminal trial is to determine whether the government has met its burden of proof as to the charged crimes, not to examine why the government did or did not indict certain individuals. For that reason, the government requests that the Court preclude evidence, comment, and argument regarding the government's charging decisions. In doing so, the Court will confine the trial to its proper purpose and prevent irrelevant, unfairly

prejudicial, and potentially confusing matters from influencing the jury's decision as to the charged crimes.

### B. Government Misconduct

The government also requests the Court to preclude evidence, comment, or argument designed to encourage nullification based on purported government misconduct. Defendant Owens has already raised in his Motion to Dismiss (ECF No. 75) an allegation that the government engaged in misconduct. That allegation is without foundation in the evidence. If the Court denies Owens's Motion to Dismiss, all the Defendants should be precluded from raising similar arguments.

There are many ways in which the Defendants may attempt, either directly or indirectly, to improperly argue government misconduct as a defense. In this case, the Defendants may attempt to argue that the government intentionally plied them with alcohol, trips, and women and thus their criminal conduct should be excused. Although the Defendants may wish to characterize the tactics of the FBI as unfair, a trick, a set-up, or the like, they may do so in briefing to the Court. Under the law, however, they should be precluded from making those arguments before the jury.

Undercover operations, including those involving recording devices and fictitious documents, are entirely permissible under the law.  If the Defendants are permitted to argue or elicit testimony to the effect that such legal investigative techniques are improper or illegal, then jury nullification is a substantial risk. The question of whether the government's tactics and conduct was appropriate is entirely irrelevant to the issues of guilt that the jury must decide, *see, e.g.*, *United States v. Boyd*, 55 F.3d 239, 241–42 (7th Cir. 1995) ("outrageous government conduct is no defense to a criminal charge and the jury should not be exposed to irrelevant

allegations of this sort"), and because government misconduct is not a matter for the jury in any event, *see, e.g.*, *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting every circuit to consider the issue has held that it is not a jury question), it would be improper to allow any comment, inquiry, or argument that suggests the Defendants should be acquitted because the procedures, tactics, or methods used by the government are unacceptable. *See United States v. Graves*, 556 F.2d 1319, 1322 (5th Cir. 1977).

Accordingly, the defense should be barred from introducing any evidence or making any arguments about the impropriety of the government's investigative decisions and conduct.

### C. Government's Purported Motives

Likewise, the Court should preclude any evidence or argument regarding the government's purported motives in prosecuting the Defendants. Any attempt to suggest selective or vindictive prosecution or to otherwise question the government's motives in front of the jury is highly improper. As the Supreme Court has plainly stated, "[a] selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 464 (internal quotation omitted). Such matters are for the Court, and not the jury, to decide.

Two participants in the scheme have pled guilty and are awaiting sentencing. However, the Defendants may seek to nullify the jury's verdict by alleging that they were somehow selectively prosecuted. That argument and others like it are baseless, and if raised, would

11

constitute blatant attempts to engender jury sympathy and seek a verdict based on assertions unrelated to the question of the Defendants' guilt. They should therefore be rejected.

### D. Government Resources and Cultural Issues

The Court should also preclude evidence, comment, or argument designed to encourage nullification based on various cultural issues. For example, the Defendants may argue that federal prosecutors from the District of Columbia should not concern themselves with the local government affairs of Jackson, Mississippi. They might try to claim that the federal government has it out for local officials or is "weaponized." They might try to claim that prosecuting cases, such as the instant prosecution, wastes valuable governmental resources. Owens might try to claim that the prosecution has distracted him from his job as Hinds County District Attorney. Banks and Lumumba might, in turn, claim that they lost their respective offices because of this prosecution. And all of the Defendants might try to claim that they were targeted because of race, political affiliation, or some other characteristic. The defense should be precluded from making such arguments—which are baseless and highly improper attempts at jury nullification—and similar arguments at trial. None of these arguments makes any fact of consequence more or less likely.

### E. Evidence of Prior Good Acts

The Government anticipates that the Defendants may attempt to offer certain evidence or arguments regarding the Defendants' prior good acts. That evidence and argument would constitute improper character evidence and should be precluded.

Rule 404(a) generally excludes character evidence "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1); *see United States v. Melton*, No. 3:08-cr-107, 2008 WL 4829893 (S.D. Miss. Nov. 4, 2008). Rule 404

provides some limited exceptions for criminal defendants. Fed. R. Evid. 404(a)(2). As relevant here, "a defendant may offer evidence of the defendant's *pertinent* trait," such as lawfulness. Fed. R. Evid. 404(a)(2)(A) (emphasis added); *see United States v. De Leon*, 728 F.3d 500, 504–505 (5th Cir. 2013). For instance, testimony regarding a defendant's character as a law-abiding citizen is generally admissible as relevant character evidence. *See De Leon*, 728 F.3d at 504–505.

Even if a court determines that a character trait is "pertinent," a defendant is still generally only able to offer character evidence in the form of reputation or opinion testimony. Fed. R. Evid. 405(a). It is only in the rare circumstance where the court determines that "a person's character or character trait is an *essential element* of a charge, claim, or defense" that a defendant may be permitted to introduce specific acts in accordance with a character trait. Fed. R. Evid. 405(b) (emphasis added). Because evidence of specific prior acts "possess[es] the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time," Rule 405 limits its use to cases in which "character is at issue in the strict sense." *United States v. Gulley*, 526 F.3d 809, 818 (5th Cir. 2008) (per curiam) (internal quotation marks omitted).

Here, it is highly likely that, if the Defendants were to use this evidence at trial, its purpose would be to show that Defendants performed work on specific occasions, or helped the community at other times, and their charitable character therefore demonstrates their innocence. But this evidence would be inadmissible for this purpose. Even if the Court determines that the Defendants could present evidence of a pertinent character trait, the Defendants would still be limited to character evidence in the form of opinion or reputation evidence. *See* Fed. R. Evid. 405. The Court should broadly exclude any evidence of specific instances of good conduct, or the absence of bad conduct on specific occasions, that the Defendants may seek to introduce.

## CONCLUSION

The Defendants' potential affirmative defenses of entrapment fails as a matter of law. And any attempt to resort to arguments aimed at jury nullification would be improper. To streamline the issues for trial and avoid exposing the jury to improper arguments and inadmissible evidence, the United States respectfully requests that the Court issue a pretrial ruling precluding the Defendants from presenting the affirmative defense of entrapment and from making arguments or introducing evidence intended to encourage jury nullification.

Respectfully submitted,


J. E. BAXTER KRUGER                    EDWARD P. SULLIVAN
United States Attorney                 Acting Chief, Public Integrity Section
Southern District of Mississippi       U.S. Department of Justice

/s/Charles W. Kirkham                   /s/ Madison H. Mumma
Charles W. Kirkham (MS Bar No.:102022)  Madison H. Mumma (NC Bar No.: 56546)
501 East Court Street, Suite 4.430      Trial Attorney
Jackson, MS 39201                       Criminal Division
Tel: (601) 965-4480                     Tel: (202) 913-4794
Email: chet.kirkham@usdoj.gov           Email: madison.mumma@usdoj.gov


/s/Kimberly T. Purdie
Kimberly T. Purdie (MS Bar No.: 104168)
501 East Court Street, Suite 4.430
Jackson, MS 39201
Tel: (601) 965-4480
Email: kimberly.purdie@usdoj.gov


/s/David H. Fulcher
David H. Fulcher (MS Bar No.: 10179)
501 East Court Street, Suite 4.430
Jackson, MS 39201
Tel: (601) 965-4480
Email: dave.fulcher@usdoj.gov

*/s/John A. Meynardie*
John A. Meynardie (MS Bar No.: 9912)
1575 20th Avenue
Gulfport, MS 39501
Tel: (228) 563-1560
Email: john.meynardie@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the

Court using the ECF system which sent notification to all ECF participants of this record.

Dated: February 27, 2026

/s/ *Charles W. Kirkham*
Charles W. Kirkham
Assistant United States Attorney

16