## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                 **Case No.  3:24-CR-103-DPJ-LGI**

**JODY E. OWENS II,**
**CHOKWE ANTAR LUMUMBA, and**
**AARON B. BANKS**

### OWENS'S REPLY IN SUPPORT OF MOTION TO DISMISS [75]

In its Response, the government attempts to explain away sworn testimony and modify record evidence without providing a single sworn statement in support of its arguments. The *only* evidence before the Court is evidence provided by Owens in support of his Motion to Dismiss. The government's unsupported arguments are not evidence and, therefore, are insufficient to alter sworn testimony or modify the plain language used by government agents in transcripts, emails, and documents.

### FALSE TESTIMONY TO THE GRAND JURY

#### Owens Was an FBI Target Prior to July 26, 2023

Cannon:     All right. And just to be clear, when this investigation got started, was Mr. Owens a target of the FBI that had been previously mentioned as somebody who was taking bribes?

████          He was not.

In the indictment, the government argues the undercover agent "visited" the Cigar Shop because a lobbyist "recommended" it based on the agent's "genuine interest" in cigars. ████ affirmed this story in his testimony to the grand jury.

In his Motion to Dismiss, Owens provided undisputed evidence that the lobbyist never "recommended" the Cigar Shop to the undercover agent.

In its Response, the government has abandoned this allegation and now admits the undercover agent merely had "discussions with the lobbyist" about the Cigar Shop.[1] In lieu of its misrepresentation concerning the recommendation, the government argues that not one, but *three* factors precipitated the undercover operation at the Cigar Shop on July 26, 2023. They are, the agent's "genuine interest in cigars," the agent's "discussions" with the lobbyist, and, a brand new factor, the so-called "source-reporting" concerning the "reputation" of the Cigar Shop.[2]

Despite its changing story,[3] the government maintains that the FBI had no "specific *desire* or *plan* to target Owens" prior to July 26, 2023.[4] Of course, the government provides no evidence to support this assertion. Owens, however, has presented extensive evidence that the FBI had a strong "*desire*" to target Owens prior to July 26, 2023; that the FBI's "*desire*" evolved into a "*plan*" to target Owens; and that "*plan*" became the undercover operation at Owens's Cigar Shop on July 26, 2023.[5]

The government argues that ███████ interview with ███████ was simply ███████ "inquiring into possible wrongdoing" by Owens.[6] Like ███████ testimony, however, this is both untrue and unsupported by evidence.

---

[1] Dkt. 87, Govt. Response to Owens's Motion to Dismiss, at 23.
[2] *Id.* at 23-24.
[3] The government changes an element of its story which appears in the indictment and was validated under oath by ███████ in his testimony before the grand jury.
[4] Dkt. 87, Govt. Response, at 24 (emphasis added).
[5] Dkt. 75-3, ███████ Interview; Dkt. 75, Motion to Dismiss, at 11-28.
[6] Dkt. 87, Govt. Response, at 24.

███████ attempted to coerce ███████ into incriminating Owens while repeatedly reminding ███████ that his freedom hung in the balance.[7] ███████ even tells ███████ "I would need you to say…'Jody's meeting with all these people' [and] 'I agree with you, there's probably something going on.'"[8] While the government suggests that ███████ was only interested in evidence of "possible wrongdoing," ███████ questions unequivocally are prospective. ███████ proposed that ███████ infiltrate Owens's Cigar Shop as an FBI undercover informant expressly, as ███ ███████ put it, to "get something" on Owens. "We just are now hearing ... where you could get something."[9] ███████ put it more bluntly. When ███████ asked what more ██████ wanted, ██████ responded, "Jody."[10] Indeed, ███████ even described for ███████ the "something" the FBI wanted him to "get." "Where … money was exchanged, a campaign donation was made…. [a]nd favors were promised or official acts were promised…."[11]

███████ "desire" to "get something" on "Jody" became the FBI's undercover "plan." In accordance with the "plan," Owens, Lumumba, Banks, and Lee all were indicted within two years, just as ██████ had described to ███████ on April 26, 2023. The ███████ interview is indisputable proof that the FBI had not only a "desire" to "target" Owens, and a "plan," but did so long before July 26, 2023.

███████ testimony to the grand jury that Owens was not an FBI target prior to July 26, 2023, was indisputably false.

---

[7] Dkt. 75-3, at 197.
[8] *Id.* at 24.
[9] *Id.* at 101.
[10] *Id.* at 158.
[11] *Id.* at 127-28.

In its Response, the government argues that ▬▬▬ when he testified Owens was not a "target of the FBI," *meant* to say that Owens was not a "predicated subject."[12] However, the government provides no evidentiary support for its argument, nor does the government get to say what ▬▬▬ *meant* when he gave false testimony to the grand jury.

In addition to the ▬▬▬ interview, Owens provided the Court with other evidence showing that Owens was an FBI target prior to July 26, 2023.

On September 12, 2022, an FBI Tactical Specialist on the FBI's Public Corruption Task Force emailed the DOJ concerning a PPE loan investigation involving Owens. After conveying the information requested by the DOJ, the FBI Tactical Specialist added:

> "*Also*, we are getting Jody [Owens] added as a *subject* to one of our investigations…."[13]

The FBI Public Corruption Task Force indisputably had been investigating Owens in 2022 and, by September 2022, was adding him as a "subject" to another "one of our investigations."

To undermine this evidence, the government argues that the FBI Tactical Specialist was "young" and, thus, presumably incompetent to do his job.[14] This argument is meritless. The government provides no evidence that the Tactical Specialist made a mistake. Indeed, ▬▬▬ is copied on the email. If a "young" FBI Tactical Specialist mistakenly added the sitting Hinds County District Attorney as a subject in a Public Corruption Task Force

---

[12] Dkt. 87, Govt. Response, at 24.
[13] Dkt. 75-22, FBI Email to DOJ, dated Sept. 12, 2022 (emphasis added).
[14] Dkt. 87, Govt. Response, at 24.

investigation, presumably ▮▮▮▮ would have said something. The government provides no evidence of a mistake and the government's unsupported argument is of no evidentiary value.

The government also argues that the Tactical Specialist *meant* to say that Owens was *possibly* "being added as a subject to one of our investigations."[15] Again, the government provides no evidentiary support whatsoever, and its unsupported argument attempting to revise a statement in the record is of no evidentiary value.

Finally, the government argues that FBI jargon is to blame for ▮▮▮▮ false testimony to the grand jury. When ▮▮▮▮ testified that Owens was not an FBI "target," the government argues that ▮▮▮▮ actually *meant* Owens was not a "predicated subject" of the investigation.[16] However, the government does not get to rephrase ▮▮▮▮ sworn testimony before the grand jury. As before, the government provides no evidentiary support for its argument. Interestingly, the government claims the "young" Tactical Specialist mistakenly added Owens as a "subject" of an FBI investigation, yet ▮▮▮▮ apparently made the same mistake. The government argues that ▮▮▮▮ who is much more senior than the Tactical Specialist, mistakenly testified that Owens was not an FBI "target" when he actually meant Owens was not a "predicated subject" prior to July 26, 2023. As with all of its arguments, the government provides no evidence in support, nor are the arguments credible.

---

[15] *Id.*
[16] *Id.*

Throughout its Response, the government uses the same words that the Tactical Specialist and ███████ used to describe FBI interest in an individual. Such words include "target," "targeted," "targeting," "subject," "designated subject," and "key player."[17] In fact, an FBI supervisory special agent used the same terminology that the government now claims was incorrect.

On August 31, 2023, an FBI supervisor texted ████████ about the undercover investigation involving Owens.[18] "Any word on the UCE reaching out to the *targets*? Who might be going [on the Nashville trip]?"[19] ███████ responded to his supervisor by identifying the "*targets*" that his supervisor asked about. "Yeah," ███████ said, "there was a phone call yesterday between the CHS and AJ ███████ It sounds like ████████████ ███████ *Jody Owens*, AJ ████████ and ███████ ████████████[20]

Based on the undisputed evidence in the record, Owens was an FBI target long before July 26, 2023, and the government presented false testimony to the grand jury.

### The FBI Undercover Agent Was Not at the Cigar Shop by Happenstance

Cannon:     All right. And [the Undercover Agent] specifically just happened to kind of run into Owens at [the Cigar Shop]; is that right?

████████     Yes. That's correct.

The government presented false testimony to the grand jury claiming that the undercover agent "just happened to kind of run into Owens" at the Cigar Shop. The

---

[17] *Id.* at 1-3, 19-28.
[18] Ex. 1, FBI Text Messages, dated 08/31/23.
[19] *Id.*
[20] *Id.*

government concedes this allegation turns on whether first government contact with Owens was a product of happenstance.

In the Indictment, the government alleges that the undercover agent went to the Cigar Shop because it was "recommended" to him based on his genuine interest in cigars.[21] As described above, the government has changed its story. Now, the government concedes that the undercover operation at the Cigar Shop was not the product of happenstance. The undercover operation was based, at least in part, on FBI "source-reporting" concerning the "reputation" of the Cigar Shop and activities in its back room.[22] According to the government, the operation was precipitated by a combination of the agent's genuine interest in cigars, his discussions with the lobbyist about the cigar bar, and "*the understanding from source-reporting of the cigar bar's reputation* that led [the agent] to the bar."[23]

Instead of claiming the Cigar Shop was "recommended," the government now argues that the FBI infiltrated Owens's Cigar Shop because of its "reputation" for "back-room dealing," but, according to the government, the "back-room dealing was not reported to be connected to Owens as of July 2023." This is false. Long before July 26, 2023, the same "source-reporting" that the government relied on to investigate "back-room dealing" at Owens's Cigar Shop also reported that the "back-room dealing" was "connected to Owens."

---

[21] Dkt. 3, Indictment, at 5.
[22] Dkt. 87, at 23-24.
[23] *Id*.

The government now argues that the FBI infiltrated Owens's Cigar Shop because of its "reputation" for "back-room dealing," but the "back-room dealing was not reported to be connected to Owens as of July 2023." In other words, the government attempts to admit it went to investigate the "back-room dealing" at the Cigar Shop on July 26, 2023, but not Owens. This is absurd. The FBI knew years earlier that Owens owned the Cigar Shop; certainly prior to July 26, 2023. Moreover, the same "source-reporting" the government relied on to investigate the Cigar Shop referenced Owens.

On August 15, 2022, ▮▮▮▮ interviewed ▮▮▮▮▮▮ In his report, ▮▮▮▮ mentions "Owens;" the "Downtown Cigar Shop, owned by JODY OWENS;" that Owens has a "very close" relationship with the Mayor; and that Owens allegedly used a local business for illicit purposes.[24] A month later, Owens was added to a Public Corruption Task Force investigation.

In April 2023, ▮▮▮▮ attempted to coerce ▮▮▮▮ into infiltrating the "back room" at the Cigar Shop to "get something" on Owens. ▮▮▮▮ and ▮▮▮▮ discussed Owens, the Cigar Shop, the back room, the Mayor, Banks, Lee, City contracts, bribery, and campaign contributions.[25]

When ▮▮▮▮ could not get "Jody," ▮▮▮▮ replaced ▮▮▮▮ with the undercover agent. ▮▮▮▮ was in communication with the undercover agent while he was inside the Cigar Shop on the night of July 26, 2023. During the operation, ▮▮▮▮ texted

---

[24] Ex. 2, ▮▮▮▮ Interview, dated 08/15/22, at 5.
[25] Dkt. 75, Motion to Dismiss, at 11-19.

the undercover agent, who responded, "still here."[26] ███████ did not ask what "here" meant because he already knew the undercover agent was at Owens's Cigar Shop. The undercover agent texted again, "the best meeting yet."[27]

██████ unequivocally knew that Owens owned and was inextricably tied to the Cigar Shop. Indeed, ██████ was counting on that. ██████ sent the undercover agent into the Cigar Shop in continuation of the FBI's prior effort to "get something" on Owens; an effort that undisputedly began long before July 26, 2023.

Based on undisputed evidence, ██████ testimony to the grand jury that FBI was not targeting Owens prior to July 26, 2023, was false.

### Owens Did Not Insert Himself into the Alleged Scheme

Cannon:    And is it accurate to say that Owens kind of then inserted himself into this bribery scheme?

██████    That's correct.

The government elicited testimony from ██████ that Owens "just kind of inserted himself into this bribery scheme." This testimony was false.

In its Response, the government states that neither the undercover agents nor case agents "believe[d] there to be a chance that [Owens] would become a subject in [sic] future."[28] The government made first contact with Owens on July 26, 2023, but the evidence shows that Owens was neither "eager" to engage, nor did Owens insert himself into the alleged scheme. To the contrary, Owens rejected criminal overtures and, thus,

---

[26] Ex. 3, FBI Text Messages, dated 07/26/23.
[27] *Id*.
[28] Dkt. 87, at 24.

exhibited reluctance on August 14, 2023. Throughout the meeting and for months thereafter the government continued to induce Owens including by offering him and his friends a luxury trip to Nashville, repeatedly contacting his friends to pressure Owens to agree to attend, sweetening the trip by offering a private jet, to name just a few.

### Additional Misrepresentations in the Government's Response

The Government makes two additional misrepresentations in the Response in an attempt to avoid dismissal.

First, the Government claims ███ ███████ rather than the undercover agent, "recommended that Owens receive an invitation to attend the October 2023 Nashville trip."[29] This is false.

On August 30, 2023, the undercover agent called ███████ to insist that Owens attend the Nashville trip.[30] The agent said, "I feel like Jody needs to be in on [the trip] …. [we] really want[] him there. And after that, it's up to you."[31] Based on the undisputed evidence, the only person the FBI wanted to ensure attended the Nashville was Jody Owens. Beyond that, the undercover agent told ███████ "it's up to you."[32] The FBI indisputably inserted Owens into the scheme, and ███████ testimony to the grand jury was false.

Second, the government claims that ███████ "recommended that several others receive invitations as well."[33] This is not material to Owens, but is nevertheless false. The undisputed evidence shows that the undercover agent directed the conversation with

---

[29] *Id* at 24.
[30] Dkt. 75-37.
[31] *Id*.
[32] *Id*.
[33] Dkt. 87, at 24.

███████ concerning who should go on the Nashville trip and who should not.[34] The undercover agent attempted to exclude ████ ████████ from the trip during multiple conversations after he and Owens exhibited reluctance on August 14, 2023.[35] ████████ only recommendation was that ████████ must attend.[36] As with the government's other representations concerning the critical time period between July and October 2023, the government's representation here is both false and unsupported.

The Fifth Circuit deals harshly with the government when false testimony is presented before the grand jury or at trial.[37] "[W]here the Government presents false testimony to the grand jury, the indictment may be dismissed … if the testimony is knowingly sponsored by the Government and material to the decision to indict."[38] "A statement is material if it is capable of influencing the factfinder with regard to the issue before it."[39] The "false statements need not be material to any particular issue, but may be material to collateral matters that might influence the court or the jury in the decision of the question before the tribunal."[40]

---

[34] Dkt. 75, at 39-41.

[35] *Id.*

[36] *Id.*

[37] *United States v. Forte*, No. 01-21216, 2003 U.S. App. LEXIS 28046, at *15 (5th Cir. Mar. 24, 2003) (citing *Miller v. Pate*, 386 U.S. 1 (1967)). "[A] court, on occasion, must use its supervisory power to safeguard the integrity of the grand jury process." *Sinha v. United States*, No. 1:14cr9-HSO-JCG-1, 2020 U.S. Dist. LEXIS 57090, at *40 (S.D. Miss. Apr. 1, 2020) (citing *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002)).

[38] *Forte*, 2003 U.S. App. LEXIS 28046, at *16 (citing *Strouse*, 286 F.3d at 773-74).

[39] *Id.* (citing *Strouse*, 286 F.3d at 771).

[40] *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002) (emphasis added) (quoting *United States v. Williams*, 993 F.2d 451, 455 (5th Cir. 1993), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162 (2001)).

11

## ENTRAPMENT AS A MATTER OF LAW

The elements of entrapment are: (1) government inducement and (2) lack of predisposition. [41] [42] Inducement is government action that encourages a defendant to participate in the alleged crime.

Inducement may include but is not limited to government "persuasion or mild coercion," "actions designed specifically to take advantage of the defendant's weaknesses," "pleas based on need, sympathy, or friendship," and "encouraging criminality after a defendant rejects overtures."[43]

Predisposition is determined at the time of first government contact.[44] The inquiry is on the "defendant's readiness and willingness to engage in the crime *absent any contact with the government's officers or agents*."[45] "[A] criminal predisposition *induced by government action cannot be used to defeat an entrapment defense*."[46] Accordingly, a defendant's actions *shortly after first government contact* and *before government inducement are* the most probative of predisposition or lack thereof.[47]

---

[41] *Jacobson v. United States*, 503 U.S. 540, 548-49 (1992).

[42] *Id.* at 548 (emphasis added) (citing *Sorrells v. United States*, 287 U.S. 435, 442 (1932)); *see also* Ex. 4, The Attorney General's Guidelines on FBI Undercover Investigations, "Protecting Innocent Parties Against Entrapment," at 16. ("DOJ UC Guidelines").

[43] *United States v. Theagene*, 565 F.3d 911, 922 (5th Cir. 2009) (first citing *Jacobson*, 503 U.S. at 546-47, 549 n.2; and then citing Bradfield, 113 F.3d at 518, 523-24).

[44] *Jacobson*, 503 U.S. at 548-49.

[45] *United States v. Martin*, 159 F. App'x 889, 893 (11th Cir. 2005) (quoting *United States v. Francis*, 131 F.3d 1452, 1456 (11th Cir. 1997) (emphasis added)).

[46] *United States v. Hollingsworth*, 27 F.3d 1196, 1201 (7th Cir. 1994) (citing *Jacobson*, 503 U.S. at 549-50, 549 n.2) (emphasis added).

[47] *United States v. Byrd*, 31 F.3d 1329, 1336 (5th Cir. 1994) ("[P]redisposition must be *independent* of government action" (emphasis in oridinal)).

In its Response, the government concedes that first government contact with Owens occurred on July 26, 2023. In the indictment, the government alleges that Owens was "ready, willing, and predisposed" by October 16, 2023.[48]

For purposes of predisposition, the critical time period is "shortly *after* first government contact" on July 26, 2023, and "*before* government inducement." Accordingly, the relevant time period for predisposition is July 26, 2023, when the government made first contact, through August 14, 2023, when the government began inducing Owens.

The government's inducement began at first contact and continued for months until at least October 16, 2023, when the government claims Owens had become "ready, willing, and predisposed."

Notwithstanding the well-established time period for predisposition and inducement under the law, the government wholly ignores and omits this time period from its Response.

In its Response, the government's "Factual Background" begins in December 2022 through July 2023, then it literally skips August and September 2023, before picking back up in October 2023.[49]

The government skips this time period for good reason. From July 26, 2023, at first contact, and for months thereafter, the government relentlessly induced Owens to participate in the alleged scheme after he exhibited reluctance to criminal overture, after overture, after overture on August 14, 2023.

---

[48] Dkt. 3, Indictment, at 6.
[49] Dkt. 87, Govt. Response, at 2-3.

FBI:   And I'm not naive. I can come here as many times as I want. I can have as much money as I want. But if you can't meet people that know <u>how to get it done</u>.[50]

FBI:   I'm not naive, I'm not stupid. I get this. If you don't understand <u>how things work</u>, nothing's ever gonna happen.[51]

FBI:   I can't do it without guys like you, because I can't go in there and <u>make things happen</u>. I don't know <u>how it works</u>.[52]

FBI:   I love having insiders.[53] …if we can't <u>buy it right</u> and build it right, it's worthless to all of us.[54]

FBI:   I deal with this everywhere I go before I bring the money guys in. What's the political environment? Can I <u>get this done</u>?[55]

FBI:   I need you fucking guys to do that, because I'm never, ever, ever, ever going to be able to <u>get that done</u>.[56]

FBI:   So <u>how do we do that in Jackson</u>?[57]

FBI:   …all I've been hearing about is how bad this political environment [is in Jackson].[58]

FBI:   Hey, guess what? I'm okay with that. <u>I pay for that a lot</u>.[59]

FBI:   We're talking <u>real talk</u>, <u>I pay for that</u>, <u>I'm okay with that</u>.[60]

FBI:   …<u>we want to make sure we can get done</u>, and that's this happening, right?[61]

---

[50] Dkt. 75-34, FBI UC Recording, dated Aug. 14, 2023, at 10:57–12:23 (emphasis added).
[51] *Id.* (emphasis added).
[52] *Id.* at 16:00–16:30 (emphasis added).
[53] Dkt. 75-35, FBI UC Recording, dated Aug. 14, 2023, at 05:10–05:16.
[54] *Id.* at 05:48–05:54 (emphasis added).
[55] Dkt. 75-29, FBI UC Recording, dated Aug. 14, 2023, at 02:48–04:36 (emphasis added).
[56] *Id.* (emphasis added).
[57] *Id.* (emphasis added).
[58] *Id.* at 11:36–11:40, 12:34–12:43, 14:31–14:38, 17:47–18:01 (emphasis added).
[59] *Id.* (emphasis added).
[60] *Id.* (emphasis added).
[61] *Id.* (emphasis added).

14

FBI:    But the money thing is not the problem so political environment and the ability to get done what we want done is what scares the shit out of us.[62]

FBI:    I need a yes tonight…given the craziness of this political environment here." "Listen, I know because I've researched it, the mayor doesn't get along with council all this craziness, but I need a commitment is and I know you're giving me the signs right now, if we come up with a plan, we get that fucking thing pushed through….[63]

Owens:    I'm going to be honest with you, we've seen your spirit before.

They come in, they flash [money].

…we've seen you before….[64]

Owens:    So here's the thing. Immediately, it's like this, you do your proposal. If it makes sense, we'll support you, if it don't, then that's it. We like good people. We want you here [in Jackson]…But if it doesn't make sense, we still gonna be cool.[65]

FBI:    …we want to put millions of dollars into an investment, and we've got a really fucked up wild card on this side [the politics]. So that's what our worry is.[66]

FBI:    I'm countin' on you guys to bring it home.[67]

FBI:    …it's going to cost us. Just tell us what we need to do.[68]

FBI:    [Say] you gotta write a check, [just tell us] here's what it is.[69]

---

[62] *Id.* (emphasis added).
[63] Dkt. 75-30, FBI UC Recording, dated Aug. 14, 2023, at 01:57–02:35 (emphasis added).
[64] *Id.* at 04:20–06:04.
[65] *Id.* (emphasis added).
[66] Dkt. 75-31, FBI UC Recording dated Aug. 14, 2023, at 10:48–11:03.
[67] *Id.* at 12:07–12:11 (emphasis added).
[68] Dkt. 75-32, FBI UC Recording dated Aug. 14, 2023, at 01:11–01:17 (emphasis added).
[69] *Id.* at 01:29-01:33 (emphasis added).

          So, <u>writing up a check is not what we're having a discussion with you about</u>.[70]

So <u>what we're having a discussion with you about</u>, <u>you get a proposal</u> [together]…."[71]

The single most important factor for entrapment as a matter of law is reluctance.[72] Reluctance includes a "significant hesitation or unwillingness or attempts to return discussion to lawful conduct."[73] There is "the important distinction between a defendant who eagerly commits a crime upon mere government suggestion, and one who reluctantly does so after further solicitation."[74] A defendant's reluctance can prompt further efforts by the government to persuade the defendant to participate.[75] Thus, courts have found both inducement and lack of predisposition, *i.e.*, entrapment, when "the government made overture after overture after overture before the defendant agreed to commit the crime."[76]

As the foregoing undisputed evidence shows, the government made criminal overture, after overture, after overture, which was met with reluctance. Throughout the August 14 meeting, and for months thereafter, the government continued to induce Owens.

When a defendant exhibits reluctance in response to a criminal overture, lack of predisposition is established. Stated differently, if the defendant had been predisposed to commit the crime, there would have been no reluctance. The very fact of reluctance

---

[70] *Id.* at 01:36-02:05 (emphasis added).
[71] *Id.* (emphasis added).
[72] *United States v. McLernon*, 746 F.2d 1098, 1113 (6th Cir. 1984) (quoting *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983)).
[73] *United States v. Theagene*, 565 F.3d 911, 920 (5th Cir. 2009).
[74] *United States v. Lard*, 734 F.2d 1290, 1294 (8th Cir. 1984).
[75] *United States v. Anderson*, 55 F.4th 545, 553 (7th Cir. 2022).
[76] *Id.* at 557.

establishes lack of predisposition. When Government inducement follows a defendant's reluctance, no longer is it possible to go back in time and determine, beyond a reasonable doubt, the defendant's mind, *i.e.*, whether he was predisposed, prior to the Government inducement. Thus, reluctance is the most important factor in the predisposition inquiry.

The Government cannot "rely on [a defendant's] conduct that was induced by government agents…."[77] Thus, "only those statements that indicate a state of mind untainted by the inducement are relevant to show predisposition."[78] Otherwise, the government agents would have a perverse incentive to continue inducing until the defendant makes enough inculpatory statements sufficient to manufacture evidence of "predisposition."

The Government fails to mention, much less distinguish, any of the cases cited by Owens for entrapment as a matter of law. Nor does the Government present any contrary caselaw, because there is none. This is telling but not surprising. The Government employed an entrapment scheme against Owens that vastly exceeds any prior Supreme Court or federal circuit court cases finding entrapment as a matter of law.

The government's response to Owens's evidence of inducement is to avoid the topic altogether. Indeed, the government uses the word "inducement" three times in its entire Response, and it does so in wholly conclusory fashion with no supporting evidence: (1) "a

---

[77] *United States v. Baez*, 761 Fed. Appx. 23, 26 (2d Cir. 2019). *See also United States v. Mayfield*, 771 F.3d 417, 437 (7th Cir. 2014) ("That the defendant eventually agreed to commit the crime in response to the government's efforts does not necessarily prove predisposition, for if the inducement was significant enough to cause even a nonpredisposed person to commit the crime, no inference can be drawn about predisposition from the success of the government's efforts.").

[78] *United States v. Poehlman*, 217 F.3d 692, 704-05 (9th Cir. 2000).

defendant must make a prima facie show of … inducement"; (2) "[t]here is no evidence of improper government inducement or lack of predisposition to commit the charged offenses"; and (3) "[t]he testimony will demonstrate an absence of any governmental targeting or inducement."[79] The foregoing is the government's entire analysis and discussion concerning inducement, which is woefully insufficient in the face of the overwhelming evidence presented by Owens.

By failing to address or provide evidence to rebut Owens's evidence during this time period, the government concedes that: (1) first government contact occurred on July 26, 2023; (2) the government made criminal overtures to Owens at the meeting on August 14, 2023; (3) Owens exhibited reluctance in response to the government's criminal overtures at the meeting on August 14, 2023; (4) the government made additional criminal overtures to Owens after he exhibited reluctance and attempted to return the conversation to lawful discussion during the meeting on August 14, 2023; (5) the government induced Owens by offering him a luxury, all-expense paid trip to Nashville; (6) the government further induced Owens by including his friends in the Nashville trip, who the agents peppered to pressure Owens into attending; (7) the government further induced Owens by offering to provide a private jet for the Nashville trip; (7) the government further induced Owens by pitching the project as an opportunity to rejuvenate inner-city Jackson, which would make Owens's, in the agent's words, a "hero";[80] (8) the government further induced Owens by excluding ▮▮▮▮ ▮▮▮▮▮▮ who along with Owens exhibited reluctance during

---

[79] Dkt. 87, Govt. Response, at 26-27.
[80] Dkt. 76, Owens's Memo in Support of Motion to Dismiss, at 15.

the meeting on August 14, 2023, from the Nashville trip; (9) the government further induced Owens by using alcohol to take advantage of Owens's "clear" weakness for alcohol to break down his resistance, overcome his reluctance, and elicit allegedly incriminating statements;[81] and (10) the government further induced Owens by offering him other lavish trips on private jets. The government has failed to substantively respond or present evidence to rebut Owens's overwhelming evidence of government inducement.

For predisposition, the government attempts to cast Owens as an "eager" participant who "never showed hesitation or unwillingness" to engage in bribery.[82] The evidence indisputably shows otherwise. As with inducement, the government completely ignores the evidence. First, the government concedes it had "no reason" to suspect Owens would engage in bribery as of July 26, 2023. Moreover, the Government wholly fails to make "the important distinction between a defendant who eagerly commits a crime upon mere government suggestion, and one who reluctantly does so after further solicitation."[83] This is not an accident. As with inducement, the government intentionally avoids Owens's evidence of reluctance, and the Government's efforts to overcome Owens's reluctance by inducing him between July 26, 2023, and October 16, 2023. The Government knows that Owens cannot be an "eager" participant *and* exhibit reluctance. Indeed, the government's extreme efforts directed at Owens between July and October 16, 2023, fly in the face of the Government's argument that Owens was "eager." Had Owens been eager to participate

---

[81] Dkt. 87, at 22 ("To be sure, it became clear to the government over the course of the investigation that Owens likes to drink alcohol.").

[82] *Id.* at 1, 27.

[83] *United States v. Lard*, 734 F.2d 1290, 1294 (8th Cir. 1984).

19

on August 14, 2023, there would have been no need for the government to induce Owens further. Yet, the government did lavishly induce Owens as described in the Motion to Dismiss.

Based on the undisputed evidence in the record, no reasonable jury could find beyond a reasonable doubt that: (1) Owens was predisposed to commit bribery prior to first government contact, and (2) no government inducement.

## OUTRAGEOUS GOVERNMENT CONDUCT

The outrageous government conduct defense is based on the Due Process Clause of the Constitution.[84] Dismissal is appropriate when the government violates "fundamental fairness [in a way that is] shocking to the universal sense of justice."[85] To determine outrageousness, the court examines the government's conduct within the "totality of the circumstances with no single factor controlling."[86]

In its Response, the government has no explanation or excuse for its outrageous conduct and, therefore, it deflects by pointing the finger at Owens. With no factual explanation, the government relies solely on Owens's alleged "active participation." However, active participation does not preclude the Court from granting Owens's relief. Neither the Supreme Court, nor any other federal circuit, recognizes "active participation" as bar to application of the outrageous conduct defense.

---

[84] *United States v. Russell*, 411 U.S. 423, 431-32 (1973) (citing *Rochin v. California*, 342 U.S. 165 (1952)).
[85] *Id.* at 432 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960)).
[86] *United States v. Tobias*, 662 F.2d 381, 384 (5th Cir. 1981).

In the Fifth Circuit, the concept of active participation as a consideration within the totality of the circumstances originated in *United States v. Tobias*.[87] Tobias's outrageous government conduct claim centered on the government's "involvement" in the charged crime. Specifically Tobias alleged that the government "provided him with the formula, necessary precursors, and continuing advice during the [drug] manufacturing process."[88] The Court declined to find outrageous government conduct, stating that Tobias's "predisposition plus active and insistent participation" distinguished his case from others finding a due process violation, e.g., *United States v. Twigg*.[89] However, neither *Tobias* nor *Twigg* found "active participation" to be the single controlling factor.[90] Therefore, a defendant's "active participation" is but one of several factors to consider under the "totality of the circumstances *with no single factor controlling*."[91] To hold otherwise would encourage government agents to engage increasingly in outrageous conduct until achieving active participation, which then would act as a de facto get out of jail free card for government misconduct. This cannot be the law and, indeed, it is not.[92]

---

[87] 662 F.2d 381, 387 (5th Cir. 1981).

[88] *Id.* at 385.

[89] *Id.* at 386-87. *United States v. Twigg*, 588 F.2d 373, 377 (3d Cir. 1978).

[90] *Twigg*, 588 F.2d at 381-82; *Tobias*, 662 F.2d at 387.

[91] *Tobias*, 662 F.2d at 387 (emphasis added).

[92] The Fifth Circuit has recognized the outrageous conduct defense despite the defendant's active participation when the government's misconduct rises beyond mere involvement in the crime *See, e.g.*, *United States v. Fortna*, 796 F.2d 724, 735 (5th Cir. 1986) (use of defendant's ex-girlfriend and mother of child as informant); *United States v. Allibhai*, 939 F.2d 244, 248-49 (5th Cir. 1991) (targeting defendant without reasonable suspicion); *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (initiating and taping phone calls between informant and defendant in which informant disparaged defense counsel and urged the defendant to plead guilty); *United States v. Mauskar*, 557 F.3d 219, 231-32 (5th Cir. 2009) (alleged *Brady* violation); *United States v. Sandlin*, 589 F.3d 749, 758-59 (5th Cir. 2009) (prosecution despite alleged knowledge defendant lacked requisite intent). *See also United States v. Ryan*, 619 F. Supp. 3d 581, 594 (E.D. La. 2022) (alleged forum-shopping); *United States v. Diaz*, No. 2:17-CR-31-KS-JCG,

In practice, courts considering outrageous government conduct focus primarily on who conceived the crime;[93] who "initiate[d] contact;"[94] and whether the defendant immediately availed himself of the criminal opportunity.[95]

Unlike *Tobias* and *Twigg*, Owens's claim is not based on government's participation in the charged crimes, *i.e.*, the act of bribery.[96] Rather, the government's outrageous conduct includes: (1) lying to the grand jury;[97] (2) concealing evidence;[98] (3) racially motivated behavior;[99] (4) material misrepresentations in the Indictment;[100] (5) attempting to unfairly prejudice Owens with a highly inflammatory "speaking indictment;"[101] (6) strategically using alcohol on Owens, who is a diagnosed alcoholic, to break down his resistance, overcome his reluctance, and elicit allegedly incriminating statements;[102] (7) offering lavish luxury trips on private jets;[103] (8) offering and paying for strip club excursions;[104] (9) encouraging and offering to facilitate prostitutes;[105] and (10) spending

---

2018 U.S. Dist. LEXIS 27316, at *2, 5 (S.D. Miss. Feb. 21, 2018) (use of a co-conspirator to record conversations in a non-custodial, pre-indictment setting).

[93] *United States v. Rey*, 706 F.2d 145, 147 (5th Cir. 1983)

[94] *Tobias*, 662 F.2d at 387.

[95] *United States v. Gray*, 626 F.2d 494, 498 (5th Cir. 1980).

[96] To the extent the Government comments on its actions, it merely frames its "role" in the alleged bribery scheme as passive compared to Owens. Dkt. 87, at 18. However, Owens does not assert the Government's overinvolvement in bribery as a basis for dismissal.

[97] *Supra*.

[98] *Supra* and *infra*.

[99] Dkt. 75, Motion to Dismiss, at 61-62. (Agent: "It's all black run down there [in Jackson]"; "Motherfucker you're gonna eat steak and lobster or are you just trying to get black pussy? What's the difference?")

[100] *Infra*.

[101] *Infra*.

[102] Dkt. 75, Motion to Dismiss, at 44-59.

[103] *Id*. at 59-60.

[104] *Id*. at 59-61.

[105] *Id*. (Agent: "Bro, it is a strip club. By all means, it's a strip club"; "You want to get fucked, you're gonna go to Buck's"; "Listen, whatever the fuck you want, you can do whatever the fuck you want")

over a million dollars to target Owens despite admitting no reason to expect that Owens would engage in the crimes charged. These outrageous acts belonged solely to the government. The government refuses to answer for its outrageous conduct which is, in and of itself, outrageous and constitutes an admission.

### Totality of Circumstances

#### a. The Concealed ████████ Interview

The Government fails to address the substance of the ████████ Interview and the government's expressly stated intent to "get something" on Owens.[106] Moreover, the government provides no explanation for withholding the ████████ Interview from Owens. Indeed, as of the date of filing, the government still refuses to produce the ████████ Interview to Owens claiming in a footnote that it is "unrelated to the underlying matter."[107] The government does not claim this concealment was an oversight or mistake. Rather, the government acknowledges it consciously withheld the ████████ Interview from Owens and continues to do so. The FBI referenced Owens more than 50 times during the ████████ Interview and expressly attempted to coerce ████████ into incriminating Owens.[108] In one of these exchanges, ██████ told ████████ he simply needed to say, "Jody's meeting with all these people" and "I agree with you, there's probably something going on."[109] The government is not withholding the ████████ Interview because it is "unrelated" but because

---

[106] Dkt. 75-3 at 89,101.
[107] Dkt. 88 at 20, n.7
[108] *Id.*
[109] Dkt. 75-3, ████████ Interview, at

it, and other evidence like it, that the government continues to withhold are damaging to the government's stated intent to "get something" on Owens.

### b. Alcohol

In its Response, the government argues that Owens "blames his conduct on alcohol" and "implies the only reason he committed bribery is because he was drunk."[110] This is inaccurate. Moreover, it evidences a disregard by the government for any rules governing its own conduct. The government concedes it knew of Owens's weakness for alcohol, as it must, based on the uncontested evidence. The government admits, "it became clear to the government over the course of the investigation that Owens likes to drink alcohol."[111] An understatement, to say the least, but an admission nonetheless. More to the point, Owens alleges the government intentionally and consistently drugged Owens with alcohol to break down his resistance, overcome his reluctance, to induce him to participate, and to elicit allegedly incriminating statements from him. In response, the government argues that, "at no point … did Owens claim to have an issue with alcohol."[112] By this ridiculous standard, the government is free to exploit a defendant's obvious weakness until the defendant confesses it to the government. The government knew of Owens's weakness and the undisputed evidence shows that the government made every effort to exploit that weakness.

> FBI:   …look at our whiskey, beer, wine, and you guys tell me
> what you want, anything.[113]

---

[110] Dkt. 87, Govt's Response, at 22.
[111] *Id.*
[112] *Id.* at 22-23.
[113] Dkt. 75, Motion to Dismiss, at 46.

FBI:    You want whiskey? You want bourbon? You want wine?[114]

FBI:    I will be upset if, after the first round that we get for you, if you don't go back on your own, that's on y'all.[115]

FBI:    I want you guys to go look over his alcohol down there.[116]

FBI:    Come down here and let's get you guys drinks.[117]

FBI:    So…okay, well, then we can go to straight liquor.[118]

FBI:    …I want you to try something. I got another bottle.[119]

FBI:    What do you need, Jody? You need, you got to get in our liquor here. Whatever you need.[120]

FBI:    Now you get whatever bottle you want. I want you to try this stuff.[121]

The government cannot feign ignorance when its agents purchased the alcohol, provided it to Owens, relentlessly pushed him to consume to obvious intoxication. Indeed, government agents can be seen hovering over Owens in Nashville while he is slumped over the table.

### c.   The Inflammatory and Prejudicial Speaking Indictment

The government published a highly inflammatory "speaking indictment" specifically to inflame the public and potential jurors. "[B]y design, the government's

---

[114] *Id.*
[115] *Id.*
[116] *Id.*
[117] *Id.* at 48.
[118] *Id.*
[119] *Id.*
[120] *Id.* at 49.
[121] *Id.* at 53.

speaking indictments advocate a story – one usually reserved for opening and closing jury arguments, but now intended for the news media, the jury pool and the trial jury."[122] By the time voir dire arrives, "would-be jurors have been tainted by hearing the worst allegations against a defendant with no rebuttal" making it difficult, if not impossible, to empanel a jury without preconceptions.[123] The government's strategy worked to great effect. The public interpreted the surplusage as undisputed, admissible evidence proving Owens's guilt of crimes charged and uncharged in the indictment.

## CONCLUSION

The government has provide no evidence to support its arguments. Based on the undisputed evidence before the Court, Owens is entitled to the requested relief as a matter of law.

Respectfully submitted,

JODY E. OWENS, II

By one of his attorneys,

CARROLL BUFKIN, PLLC

/s/ Gary Bufkin

_____

By: Gary Bufkin, MSB# 10810

---

[122] Ronald H. Levine, *Talk is Cheap: The Misuse of 'Speaking' indictments, Business Crimes Bulletin* (Nov. 2016), https://www.postschell.com/uploads/post__schell__talk_is_cheap__the_misuse_of_speaking__indictments__busine ss_crimes_bulletin__nov_2016.pdf.

[123] Abbe David Lowell, *Prosecutors Erode Our Rights with Show-and-Tell Indictments Like Eric Adams's*, Wash. Post (Oct. 9, 2024, at 8:25 ET), https://www.washingtonpost.com/opinions/2024/10/09/prosecutorindictments-eroding-rights/.

OF COUNSEL:

Gary Bufkin, MS Bar No. 10810
Luke Whitaker, MS Bar No. 105579
Joel Averitt, MS Bar No. 106777
CARROLL BUFKIN, PLLC
1076 Highland Colony Parkway, Ste 125
Ridgeland, MS 39157
(601) 982-5011
tgb@carrollbufkin.com
lwhitaker@carrollbufkin.com
javeritt@carrollbufkin.com

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which provides notice and a copy to all counsel of record.

Dated: March 2, 2026

/s/ Gary Bufkin

_____

Gary Bufkin, MSB# 10810